UNITED STATES, Appellee

v.

Matthew R. ADAMS Jr., Specialist
U.S. Army, Appellant

No. 14-0495

Crim. App. No. 20110503

United States Court of Appeals for the Armed Forces

Argued January 14, 2015

Decided April 27, 2015

ERDMANN, J., delivered the opinion of the court, in which STUCKY and OHLSON, JJ., joined. BAKER, C.J., filed a separate dissenting opinion, in which RYAN, J., joined.

Counsel

For Appellant: Captain Nicholas J. Larson (argued); Lieutenant Colonel Jonathan F. Potter (on brief); Colonel Kevin Boyle, Lieutenant Colonel Peter Kageleiry Jr., Major Aaron R. Inkenbrandt, Major Vincent T. Shuler, and Captain Brian D. Andes.

For Appellee: Captain Jaclyn E. Shea (argued); Colonel John P. Carrell, Major John Choike, Major Daniel D. Derner, and Captain Timothy C. Erickson (on brief).

Military Judge: Andrew J. Glass

**This opinion is subject to revision before final publication.**

United States v. Adams Jr., No. 14-0495/AR

Judge ERDMANN delivered the opinion of the court.

Specialist (SPC) Matthew R. Adams Jr. was charged with numerous offenses, including robbery, in violation of Article 122, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921 (2006). Consistent with his plea, Adams was acquitted of all charges but was found guilty of larceny, as a lesser included offense of robbery, in violation of Article 121, UCMJ, 10 U.S.C. § 921 (2006). This Court granted review to determine whether the confession admitted by the military judge was properly corroborated.[1] Finding insufficient corroboration for a number of essential facts admitted in the confession, we hold the military judge abused his discretion and therefore reverse the decision of the United States Army Court of Criminal Appeals (CCA).

## Background

SPC DT implicated himself and Adams in a robbery of cocaine from a local drug dealer and also alleged that Adams had a weapon and cocaine in his house. Based on this information, Special Agents (SA) McKinney and Villegas of the Army's Criminal

---

[1] We granted review of the following issue:

Whether the Army Court of Criminal Appeals erred in finding that the military judge did not abuse his discretion in admitting the portion of Appellant's sworn statement regarding the [theft] of cocaine because the government failed to corroborate, in accordance with Military Rule of Evidence 304(g), the essential fact that Appellant took cocaine.

Investigation Division (CID) obtained a search authorization for Adams' house.  While searching the house, the agents found a Smith & Wesson "Sigma" .40 caliber handgun.  No cocaine was found.

After the search, Adams was brought in for questioning. Adams provided a sworn statement in which he confessed to stealing cocaine from a drug dealer named Ootz[2] with DT and another co-conspirator.  In his statement, Adams provided his motive for the larceny, the general location of the offense, admitted that he brandished a .40 caliber Smith & Wesson "Sigma" handgun, and that his co-conspirator grabbed the cocaine from Ootz.

At trial, the government did not call Ootz or the two accomplices, but relied on Adams' confession and corroboration testimony from the two CID agents.  SA McKinney testified that she knew of a "Timothy" Ootz and that he was "a previous soldier."  She did not testify how or when she learned of Ootz or that she knew him to be a drug dealer.  SA McKinney testified that, during her interview of Adams, he told her that the larceny "started at the Walmart, and then it moved to another location," but she did not remember where.  SA McKinney testified there was a Walmart located in Calcium, New York,

---

[2] There was no consensus at trial as to either Ootz' first name or the spelling of his last name.  SA McKinney identified him as Timothy while SA Villegas identified him as Matthew.

3

"right outside the north gate," but did not testify about a Microtel at all. SA McKinney also confirmed that CID did not find any cocaine at Adams' house.

Special Agent Villegas testified that she was not aware of Ootz until March 4, the day CID interviewed both DT and Adams. She further testified that Ootz "was a former [s]oldier, reported to be a drug dealer in the local area." Villegas indicated that she had obtained this information from her "research running through cases that we have had at CID." Villegas testified there was a Walmart in Evans Mills, New York, but did not believe there was one in Calcium, as stated by McKinney. Villegas also testified that the Walmart in Evans Mills was located near a Microtel.

During McKinney's testimony, the government sought to admit Adams' written statement. The defense objected to the admission on the grounds it lacked corroboration. Following additional testimony and arguments, the military judge granted the defense motion in part and denied it in part. After excising a portion of the confession for lack of corroboration, the military judge admitted the following portions:[3]

> [Adams:] . . . [DT] told me who the person was Ootz
> [sic], who had ripped me off previously & gave me the
> idea to rob him. We met him [Ootz] at Walmart and had
> him drive over to the Microtel where we got in his
> car. [DT] looked at the stuff began talking shit & I

---

[3] Following a short narrative, the statement continued in question and answer format.

4

pulled my gun out and [DT] grabbed the coke & we got out of Ootz [sic] car & got in mine and returned to base.

. . . .

Q: What day did this take place?

A: 28 Feb 2011[.]

. . . .

Q: What was [the] deal agreed upon by [DT] and Ootz?

A: A ball for $220[.]

Q: Did you have the $220 on you?

A: No only $80 cause we were gonna rob him[.]

. . . .

Q: What happened after you all got in Ootz [sic] vehicle?

A: [DT] asked for the stuff and an argument began and I pulled out my gun[.]

Q: Did you say anything to Ootz?

A: I told him not to do that shit again & then we got out[.]

Q: What did you mean by that?

A: About ripping [me] off[.]

Q: Did Ootz say anything?

A: No[.]

Q: Did Ootz see the gun in your hand?

A: Yes I waived [sic] it around quick[.]

Q: What kind of gun did you have?

A: S&W 40 cal sigma[.]

United States v. Adams Jr., No. 14-0495/AR

Q: Where did you get the gun?

A: Bought in PA/ April 2010[.]

Q: When did you bring the gun to FDNY?[4]

A: Christmas leave 2010[.]

Q: What happened after you, [DT] and [the other co-conspirator] got back in your vehicle?

A: Nothing we drove back to post[.]

Q: Where was the gun when you were driving back on post?

A: On me in my pants[.]

The military judge held that the evidence which corroborated these essential facts in Adams' confession consisted of:

> The description of the handgun the accused admitted to "waiving [sic] around quick" is a "S&W .40 cal." This matches the description of [the weapon found in the search]. . . . [T]he Court finds that these items found in the accused's home four days after the alleged crimes coupled with the testimony regarding the location of a Walmart and Microtel in Evans Mills, New York to be sufficient to meet the standard of the slight corroboration required by the rule and case law.

On appeal, the CCA affirmed Adams' conviction. United States v. Adams, No. ARMY 20110503, 2014 CCA LEXIS 61, at *9, 2014 WL 448415, at *3 (A. Ct. Crim. App. Jan. 29, 2014). The CCA held the military judge did not abuse his discretion in admitting the confession, agreeing that it was corroborated by the handgun and the testimony as to the proximity of a Walmart

---

[4] Fort Drum, New York.

6

United States v. Adams Jr., No. 14-0495/AR

and a Microtel.  2014 CCA LEXIS 61, at *6-9, 2014 WL 448415, at

*2-3. The CCA went on to hold that the confession was also

corroborated by SA Villegas' testimony of a known drug dealer in

the local area named Ootz.

### Discussion

We review a military judge's admission of evidence for an

abuse of discretion.  United States v. McCollum, 58 M.J. 323,

335 (C.A.A.F. 2003).

Military Rule of Evidence (M.R.E.) 304(c) reads, in

pertinent part:[5]

> An admission or a confession of the accused may be
> considered as evidence against the accused . . . only
> if independent evidence . . . has been introduced that
> corroborates the essential facts admitted to justify
> sufficiently an inference of their truth. . . . If the
> independent evidence raises an inference of the truth
> of some but not all of the essential facts admitted,
> then the confession or admission may be considered as
> evidence against the accused only with respect to
> those essential facts stated in the confession or
> admission that are corroborated by the independent
> evidence.

Emphasis added.  The current iteration of M.R.E. 304(c)[6] was

established in the Manual for Courts-Martial, United States

(MCM) in 1969 and was based on the Supreme Court's decisions in

Opper v. United States, 348 U.S. 84 (1954), and Smith v. United

---

[5] At the time of Adams' trial, M.R.E. 304(c) was M.R.E. 304(g).
[6] Originally para. 140a, then M.R.E. 304(g), now M.R.E. 304(c).
While there have been changes in word order, M.R.E. 304(c)
remains substantively the same as the original para. 140a.  MCM,
ch. XXVII, para. 140a, at 27-15 (1969 rev. ed.).

United States v. Adams Jr., No. 14-0495/AR

States, 348 U.S. 147 (1954).  See Dep't of the Army Pam. 27-2,

Analysis of Contents Manual for Courts-Marital, United States

1969 Rev. Ed. ch. 27, para. 140a(5) (July 1970); see also

Article 36, UCMJ, 10 U.S.C. § 836 (2012); Exec. Order No. 11430,

33 Fed. Reg. 13,502 (Sept. 11, 1968).  While in Opper the

Supreme Court held that it "is necessary . . . to require the

Government to introduce substantial independent evidence which

would tend to establish the trustworthiness of the statement,"

348 U.S. at 164, the "substantial" corroboration language was

not incorporated into M.R.E. 304(c).  Instead, M.R.E. 304(c)

requires an amount of independent evidence sufficient to justify

an inference of truth of the essential facts admitted from the

confession.[7]  While we have previously noted that a sufficient

amount of evidence can be slight, the evidence must nevertheless

be sufficient in quantity and quality to meet the plain language

of the rule.  United States v. McClain, 71 M.J. 80, 82 (C.A.A.F.

2012); United States v. Grant, 56 M.J. 410, 416 (C.A.A.F. 2002);

United States v. Rounds, 30 M.J. 76, 83 (C.M.A. 1990) (Everett,

C.J., concurring in part and dissenting in part).

---

[7] The dissent would change the standard in M.R.E. 304(c) to a "trustworthiness" standard, where, if one part of the confession is found to be "trustworthy," that "trustworthiness" can be extrapolated to those portions of the confession which are not supported by independent evidence, thereby allowing the entire confession to be admitted into evidence.  However, M.R.E. 304(c) expressly rejects the concept of extrapolating "trustworthiness" by requiring independent evidence of each essential fact to be corroborated.

United States v. Adams Jr., No. 14-0495/AR

In United States v. Cottrill, 45 M.J. 485 (C.A.A.F. 1997), we explained:

> The corroboration requirement for admission of a confession at court-martial does not necessitate independent evidence of all the elements of an offense or even the corpus delicti of the confessed offense. Rather, the corroborating evidence must raise only an inference of truth as to the essential facts admitted.

Id. at 489 (citation omitted). Nevertheless, the evidence corroborating the essential facts of the confession must be independent. Grant, 56 M.J. at 416.

What constitutes an essential fact of an admission or confession necessarily varies by case. Essential facts we have previously considered include the time, place, persons involved, access, opportunity, method, and motive of the crime. See, e.g., United States v. Baldwin, 54 M.J. 464, 465-66 (C.A.A.F. 2001); Rounds, 30 M.J. at 77-78; United States v. Melvin, 26 M.J. 145, 147 (C.M.A. 1988).

When independent evidence which is sufficient to corroborate an essential fact is provided, that essential fact is admissible. M.R.E. 304(c). If sufficient corroborating evidence of an essential fact is not provided, then the uncorroborated fact is not admissible and the military judge must excise it from the confession. See id. The essential facts which are corroborated may be used against the accused alongside any other properly admitted evidence. See, e.g., Opper, 348 U.S. at 93 ("Those facts plus the other evidence

9

besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt.").

There is no "tipping point" of corroboration which would allow admission of the entire confession if a certain percentage of essential facts are found to be corroborated. For instance, if four of five essential facts were corroborated, the entire confession is not admissible. Only the four corroborated facts are admissible and the military judge is required to excise the uncorroborated essential fact. M.R.E. 304(c). This analysis is completed by the military judge examining the potential corroboration for each essential fact the government wishes to admit. Id.[8]

In the present case, three facts were found to have corroborated Adams' confession: the possession of a handgun; testimony concerning the existence of a drug dealer named Ootz; and testimony regarding the location of a Walmart and a Microtel. The portion of Adams' confession admitting that he possessed a handgun was sufficiently corroborated by the matching handgun found by CID during the search of his house.

---

[8] In United States v. Seay, 60 M.J. 73, 80 (C.A.A.F. 2004), while interpreting the corroboration requirements under M.R.E. 304(g), the court stated: "The issue is whether the facts justify the inference as to the truth of the confession." While that statement could be interpreted to mean that the proper analysis is whether an appellant's confession is admissible in its entirety, it must be read in conjunction with the Seay court's earlier reference to the plain language of the rule referencing the need for corroboration of the essential facts. Id. at 79.

United States v. Adams Jr., No. 14-0495/AR

While questions arise as to whether the location evidence sufficiently corroborated the place of the crime and whether the identification of Ootz was sufficiently reliable and independent of Adams' confession, we need not decide those issues.

In a case where the only direct evidence of the crime was the confession, it is important to determine what was not corroborated. Here, there is no evidence which corroborates Adams' opportunity or motive to commit the crime, his access, his intent, the accomplices involved, the subject of the larceny (i.e., cocaine), the time of the crime, or the act of the larceny itself (waving the handgun while [DT] grabbed the cocaine). In short, virtually none of the facts we have previously articulated as essential were corroborated. Even if we were to assume that the evidence relied upon below properly corroborated the location of the larceny and the identity of the victim, those facts, combined with the ownership of the handgun, are legally insufficient to support the larceny conviction absent any additional direct evidence of a crime. We therefore conclude that the military judge abused his discretion when he admitted numerous uncorroborated essential facts from Adams' confession. Because the confession was "the government's key piece of evidence" Adams, 2014 CCA LEXIS 61, at *3, 2014 WL 448415 at *1; the admission of the uncorroborated essential facts was prejudicial to Adams.

Decision

The decision of the United States Army Court of Criminal Appeals is reversed and the findings and sentence are set aside. The record is returned to the Judge Advocate General of the Army.  A rehearing may be authorized.

United States v. Adams Jr., No. 14-0495/AR

BAKER, Chief Judge, with whom RYAN, Judge, joins (dissenting):

This Court is riding a pendulum back and forth when it comes to the law on corroborating confessions. In eleven years, we have moved from one extreme in United States v. Seay, 60 M.J. 73 (C.A.A.F. 2004), to the other extreme in United States v. Adams, __ M.J. __ (C.A.A.F. 2015). In Seay, the Court found the appellant's confession to stealing a wallet was corroborated by the fact -- or more precisely the absence of the fact -- that no wallet was found on the victim's body. 60 M.J. at 80. From the absence of this fact, the Court made an inference that because no wallet was found on the victim, the appellant must have taken it. Id. Thus, his confession to stealing the wallet was corroborated. Id.

Today, the Court swings the law back to the opposite extreme. In the view of the majority, "[w]hen independent evidence which is sufficient to corroborate an essential fact is provided, that essential fact is admissible." Adams, __ M.J. at __ (9). However, they go on to say, "if sufficient corroborating evidence of an essential fact is not provided, then the uncorroborated fact is not admissible and the military judge must excise it from the confession." Id. The majority thus requires that every essential fact identified in a

confession must be individually corroborated on a one-for-one basis.

The majority's approach precludes the drawing of appropriate inferences from an otherwise trustworthy statement. Moreover, because the only essential fact in Appellant's statement that is not demonstrated by independent evidence is the actual theft of the cocaine, the Court's decision effectively returns the law to a corpus delecti test.

The majority is trying to have it both ways. It purports to adhere to United States v. Cottrill, 45 M.J. 485 (C.A.A.F. 1997), disavowing the corpus delecti test or a requirement to prove all the elements of the offense, but then rejects Appellant's statement for lack of independent evidence, where the only independent evidence of an essential fact that is lacking is of the crime itself: "[DT] grabbed the coke." It is difficult to imagine, however, that a drug dealer would ever report the theft of cocaine to the police. All the other facts in Appellant's statement are corroborated: the weapon used, the place of the crime, Appellant's participation in drug culture, and most importantly, the unique name of the "victim." The last point is particularly noteworthy because of the unlikelihood that Appellant could make up the name "Ootz," which then also happened to be the name of a known drug dealer in the area.

2

I did not join Seay and I do not join the Court today.  I believe the law is and should be in a different place between the extremes presented in Seay and in Adams.

I would start with two principles.  The purpose of the law as stated in Smith v. United States, 348 U.S. 147, 153 (1954) (citing Warszower v. United States, 312 U.S. 342, 345 (1941)), is to protect against false confessions.  More specifically, Military Rule of Evidence (M.R.E.) 304(g) and case law seek to protect against three possibilities:  the risk that interrogation might produce a false confession; the risk that for psychological reasons or attention gathering purposes a person might choose to falsely confess; and, in the military context, there is the additional risk that grade and command differentials might result in false confessions.  See United States v. Yeoman, 25 M.J. 1, 4 (C.M.A. 1987) (stating that the purpose of the corroboration rule is to prevent "errors in convictions based upon untrue confessions alone" or confessions "based upon words which might reflect the strain and confusion caused by the pressure of a police investigation") (citation and internal quotation marks omitted).  To this end, the law requires "the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement."  Opper v. United States, 348 U.S. 84, 93 (1954).

The first principle, therefore, is that the purpose of the law is to establish the trustworthiness of the statement. In other words, not every element or fact contained in the confession must be independently proved. The goal is trustworthiness. Thus, if substantial independent evidence indicates the statement is trustworthy, then appropriate inferences may be drawn from the statement beyond those for which there is independent evidence including the fact that a crime has been committed.

The second principle is that where a conviction is based exclusively on a confession, a court's inquiry should, as always, be rigorous and searching. But the test is one of corroboration. The purpose is to establish the trustworthiness of the statement, not to have a mini-trial to establish the elements of the confession and thus the crime, so that one can then introduce the confession in order to prove the crime.

If the government were required to have independent evidence of every essential fact in the confession as the majority now concludes, then the confession is no longer independent evidence, it is a redundant supplement to the government's other evidence. Moreover, the government would be barred from using the confession to fill in essential facts that might not otherwise be known to the government. As Cottrill recognized, the "quantum" of evidence required to corroborate

4

need only be slight.  45 M.J. at 489.  That is why, consistent with our approach to Article 31, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831 (2012), this Court has not adopted a literal reading of M.R.E. 304(g), because the result would be unworkable in practice.  Rather, this Court has recognized that M.R.E. 304(g) was intended to implement Opper. See Manual for Courts-Martial, United States ch. xxvii, para. 140.a.(5) (1968 ed.) (MCM) (the corroboration rule was updated in the 1968 MCM to say, in part, "the independent evidence need only raise an inference of the truth of the essential facts admitted," thus reflecting the Supreme Court's holding in Opper); United States v. Rounds, 30 M.J. 76, 80-82 (C.A.A.F. 1990).  Thus, the Court has heretofore applied a purpose-based reading of the rule that tests for trustworthiness through independent evidence of those essential facts necessary to validate the trustworthiness of the confession.  United States v. Maio, 34 M.J. 215, 218 (C.M.A. 1992); Cottrill, 45 M.J. at 489; Seay, 60 M.J. at 79-80.

In this case, the military judge admitted Appellant's statement that:

> After my friend Beirl move [sic] me, [DT] & Anderson where [sic] at my house and [DT] was trying to get drugs.  He told me who the person was Ootz [sic], who had ripped me off previously & gave me the idea to rob him.  We met him at a Walmart and had him drive over to the Microtel where we got in his car.  [DT] looked at the stuff began talking

shit & I pulled my gun out and [DT] grabbed the coke & we got out of Ootz car & got in mine and returned to base.

Q:  What day did this take place?

A:  28 Feb 2011[.]

. . . .

Q:  What was deal agreed upon by [DT] and Ootz?

A:  A ball for $220[.]

Q:  Did you have the $220 on you?

A:  No only $80 cause we were gonna rob him[.]

. . . .

Q:  What happened after you all got in Ootz [sic] vehicle?

A:  [DT] asked for the stuff and an argument began and I pulled out my gun[.]

Q:  Did you say anything to Ootz?

A:  I told him not to do that shit again & then we got out[.]

Q:  What did you mean by that?

A:  About ripping [people] off[.]

Q:  Did Ootz say anything?

A:  No[.]

Q:  Did Ootz see the gun in your hand?

A:  Yes I waived it around quick[.]

Q:  What kind of gun did you have?

A:  S&W 40 cal sigma[.]

Q:  Where did you get the gun?

A:   Bought in PA/ April 2010[.]

Q:   When did you bring the gun to FDNY?

A:   Christmas leave 2010[.]

Q:   What happened after you, [DT] and Anderson got back in your vehicle?

A:   Nothing we drove back to post[.]

Q:   Where was the gun when you were driving back on post?

A:   On me in my pants[.]

The military judge and CCA concluded this statement was corroborated.  I agree and concur in the lower court's assessment of the corroborating facts.  The evidence of corroboration is strong.  First, Ootz was a former soldier and known drug dealer, with an uncommon if not unique last name that matched the name of the drug dealer Appellant confessed to robbing.  CID knew this based on its independent search of its files.  Second, the same type of weapon -- a .40 mm Smith & Wesson -- Appellant stated he used in the crime was found in his residence four days later.  Third, bags of synthetic marijuana, smoking devices, and a syringe were also found in Appellant's house.  While cocaine is a perishable item, this evidence demonstrated Appellant's knowledge and connection to drug culture.  Less important is the fact that the locations where Appellant stated the events took place, in fact, exist in the actual area of the base.  What is missing is independent

7

evidence of the robbery itself, i.e., that "[DT] grabbed the coke."  But requiring evidence of this fact leaves us with the corpus delecti test.  What we have instead is corroboration of the means, the place, the drug connection, and the unique name of the "victim" all of which indicate the statement is trustworthy.  Therefore, I would affirm the military judge, the CCA, and the conviction, and respectfully dissent.