# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, PENLAND, and BURTON
Appellate Military Judges

**UNITED STATES, Appellant**
**v.**
**Specialist KYLE D. RICH**
**United States Army, Appellee**

ARMY 20130805

Headquarters, Fort Campbell
Steven E. Walburn, Military Judge
Lieutenant Colonel Sebastian A. Edwards, Staff Judge Advocate (pretrial)
Colonel Jeff A. Bovarnick, Staff Judge Advocate (recommendation)
Colonel Susan K. Arnold, Staff Judge Advocate (addendum)

For Appellant:  Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain Patrick A. Crocker, JA (on brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Major Daniel D. Derner, JA; Captain Steve T. Nam, JA (on brief).

9 August 2016

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of rape of a child in violation of Article 120, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 920 (2006 & Supp. I 2008).  The convening authority approved the adjudged sentence of a dishonorable discharge, eight years confinement, and reduction to the grade of E-1.  The convening authority approved the sentence as adjudged and credited appellant with 457 days against the sentence to confinement.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant raises four assignments of error, two of which, the admission of a statement as an excited utterance and the corroboration of appellant's confession, merit discussion but not relief.

## BACKGROUND

Appellant stands convicted of raping Ms. CP, his girlfriend's daughter, in early 2008.  Appellant's crime involved penetrating CP's vagina with his finger. The evidence tying appellant to this act consisted mainly of his admission during an interview with Special Agent (SA) BM of the Army Criminal Investigation Command (CID) and various statements by CP admitted as an excited utterance under Military Rule of Evidence [hereinafter Mil. R. Evid.] 803 and under the residual hearsay exception under Mil. R. Evid. 807.

*A. Appellant's Statement to CID*

On 27 February 2009, a year after CP's disclosure of the abuse, SA BM interviewed appellant concerning the abuse of CP.  Initially, appellant denied abusing CP or, for that matter, ever being alone with her.  As the interview continued, appellant's story changed and he admitted to touching CPs vagina on one occasion with his right hand when he was helping her towel off after a bath or a shower.  Appellant claimed this assault occurred sometime in mid-February 2008. Appellant stated that he "began to fondle her vagina for no more than [thirty] seconds using only my middle finger not going past the first knuckle."  Appellant admitted that he told CP following the assault that nobody needed to know about the incident and that it was "an accident."  Following SA BM's testimony, the military judge admitted appellant's written statement without objection from defense counsel.

*B. CP's Statement to Forensic Interviewer*

On 25 March 2008, Ms. AP, a trained forensic interviewer with the Montgomery County, Tennessee, Child Advocacy Center, interviewed CP.  The government sought to introduce a digital video disc (DVD) of this interview both under the residual hearsay exception of Mil. R. Evid. 807 and as corroboration of appellant's statement to CID.  AP was not new to child interviews, as she conducted hundreds prior to meeting CP.  This interview occurred approximately twenty-five days after CP first disclosed the abuse to a neighbor.

During the interview, CP related that appellant had touched her in the "wrong place," which she later specified as her "hoo hoo."  CP later circled the groin area of a diagram of the human body drawn by AP to show where she had been touched.  CP drew this circle during a break in the interview, after AP briefly stepped out of the room.  CP stated in the interview the touching occurred one time when she was in the bathroom taking a shower.

2

After considering the foundational testimony of CP, and after the admission of appellant's statement to CID, the military judge admitted the videotaped interview. Prior to its admission, the military judge reviewed the video in its entirety and had the opportunity observe the techniques used by Ms. AP in speaking with the child. In finding video admissible under Mil. R. Evid. 807, the military judge made the following pertinent factual findings:

> The court closely observed [CP] on the stand yesterday. The court found based on her body language, facial expressions and how she verbally answered questions posed to her by counsel and the court, [CP] had extreme difficulty both remembering events from 2008, as well as in general expressing herself. She had repeated difficulty on the stand recalling events, and when asked about the alleged events she stated that she did not remember or "that did not happen." [CP] even stated at one point that she did not remember talking with [AP]. [CP] also stated she did not know who the accused was nor did she acknowledge that the person who had inappropriately touched her was present in court.

> In summary, her in[-]court testimony provided very little meaningful testimony concerning this alleged offense. Her in-court testimony stands in sharp contract with her statements during the forensic interview, wherein she stated the accused, whom she referred to as her mom's boyfriend Kyle, had sexually assaulted her while taking a shower.

and;

> As to materiality: The materiality of this statement is clear. The alleged offense is charged as occurring between on or about 1 February 2008 and 1 March 2008. The interview with [AP] occurred on 25 March 2008, which, according to [AP] was approximately 25 days after the alleged abuse was reported. This time frame is consistent with the testimony given by [MB] as well as the timeframe referenced by the accused in his statement to CID. The court finds [CP's] statements to [AP] therefore to be close in time to the alleged offense.

> As to necessity: Despite the best efforts and good faith on the part of the government to obtain more specific in[-]

court testimony from [CP] concerning these alleged incidents, [CP] has clearly been unable to adequately recall and testify in open court concerning the alleged incident. This prong may be satisfied where a witness cannot remember or refuses to testify about a material fact, and there is no other more probative evidence of that fact. . . .

The court finds the facts of this case squarely meet this prong. The court finds the statements made by [CP] in the forensic interview to be clearly pertinent to material facts.

As to reliability: As there is no physical evidence in this case, prior statements by [CP] are the only evidence presented before the court that corroborates the accused's statements to CID. [CP's] close in time statements to [AP] are clearly relevant evidence for this purpose. . . .

The court also finds that [CP's] statements to [AP] are very consistent with the accused's admissions to CID. . . .

In finding CP's statements to AP possessed the requisite guarantees of trustworthiness, the military judge noted:

The court has viewed this interview and had an opportunity to observe [CP's] demeanor, evaluated the questioning techniques, observe the physical surroundings, and evaluate her ability to relate the events at issue. The court found that [AP's] questioning of [CP] was not unduly leading or suggestive and that [CP], although clearly uncomfortable when speaking about the alleged incidents, spoke in terms that would be expected of her age at the time of the interview.

[. . .]

The court has no credible evidence before it that [CP] had been coached in any manner prior to this interview. The environment in which [CP's] statement was given was non-coercive. Additionally, the court has been presented with no evidence that [CP] had a bias or motive to lie . . . [and] [t]here is likewise no evidence before the court that anyone attempted to have [CP] fabricate or embellish her statements to [AP].

### C. CP's Statement to MB – Excited Utterance

At trial, CP, then eleven years old, remembered little of the details concerning her assault or her assailant. When asked at trial, she was unable to identify the appellant. She recalled her assailant was a male, but could provide no further details concerning his identity. She testified the assault occurred in a closet nearby a bathroom in her house. Her attacker touched her chest, buttocks and vaginal area, though she could not recall if it was above or below her clothing.

Ms. CP testified that she told a neighbor, Ms. MB, about the assault. CP considered MB to be a "second mom," and MB considered CP to be like one of her children. MB had almost daily interaction with CP and often acted as CP's caregiver. CP often stayed at MB's house after school and frequently took baths in a jacuzzi tub in MB's home. MB generally described CP as a "playful talkative little girl."

On or about 1 March 2008, CP's mother, Ms. SP, was taken from her house by the police. MB showed the police officers on scene a power of attorney to care for CP and her younger brother. MB then tried to get into SP's house to get clothes for the children. However, two men who were in the house (whom MB could not identify) refused her entry. While this was occurring, CP was running around the yard and in and out of MB's house.

After the police left and the scene settled down, MB prepared to give CP and her children a bath. While CP was normally "ecstatic" with taking a bath in the Jacuzzi tub, she this time did not want to take her clothes off. MB testified that CP was "acting strange" and described her demeanor as "like a zombie." MB eventually convinced CP to remove her clothing. MB testified that CP "didn't want me touching her, she didn't want me soaping her up, she didn't want me—she was backing up." It was then CP revealed that the appellant had touched her with his penis.[1] CP testified she "felt safe" to tell MB about the touching as MB was a mother figure. Neither MB nor CP could recall at trial when the touching occurred in relation to CP's disclosure.

At trial, the government sought to admit CP's statements to MB as excited utterances pursuant to Mil. R. Evid. 803(2). Defense counsel objected to the admission of these statements on foundational grounds, in large measure because the witnesses failed to establish the "time tie" between the touching and subsequent

---

[1] Initially, the military judge indicated he intended to consider the touching with the penis as part of Ms. CP's excited utterance; he later determined he would not consider this statement as it involved uncharged misconduct.

report to MB. The military judge and defense counsel engaged in the following colloquy concerning the timing of CP's statements:

> DC: Well, Your Honor, we just do not know when the alleged event took place. We don't know the proximity in time of when [CP] spoke with [MB]. There's been no foundation for excited utterance, Your Honor.
>
> MJ: All right. As to that basis defense, [CP] did testify that she told [MB] when it happened in referring apparently to this statement. So I believe the time element's there or potentially there to [sic] purposes of making a ruling . . . .
>
> DC: Your Honor, I don't believe from the testimony that [CP] did testify she was the first person.
>
> MJ: Okay, that's—the court's going on what the court recalls the evidence to be. So you're never going to win that one. . . .
>
> MJ: [Defense] is arguing that there's no time tie in between when this alleged incident occurred and when [CP] told this revelation, whatever it is, to the witness on the stand. Court's indicated that time—the court finds the time—time to be close enough.

The military judge, in later admitting CP's statements as excited utterances, found:

> MJ: Court finds that [CP] did on fact state that she found [MB] to be a safe person. That she told [MB] when this happened, even though she doesn't recall exactly the timeframe between when this alleged incident happened and when she told [MB]. Court finds that it was close enough in time for—to qualify as an excited utterance. Also the testimony of [MB] concerning that [CP] was clearly acting in a different—instead of being excited about taking a bath she basically did not want to take a bath, she did not want to take her clothes off, was glaring, looked like a zombie. And the court finds that under those circumstances with that testimony that the court will find those statements by [CP] to be admissible as excited utterances under [Mil. R. Evid.] 803(2).

## LAW AND DISCUSSION

A military judge's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010); *United States v. Cucuzzella*, 66 M.J. 57, 59 (C.A.A.F. 2008); *United States v. Roberson*, 65 M.J. 43, 45 (C.A.A.F. 2007). A military judge abuses his discretion when he or she is incorrect about the applicable law or improperly applies the law. *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F 2004). The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015). The challenged action must be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *White*, 69 M.J. at 239 (internal quotation marks and citation omitted). A military judge's factfinding is reviewed under the clearly erroneous standard of review, while conclusions of law are reviewed de novo. *Id*.

### A. *Appellant's Confession*

We first address whether the military judge properly admitted appellant's confession to CID. Mil. R. Evid 304(c) provides in pertinent part:

> (1) An admission or confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been admitted into evidence that corroborates the essential facts admitted to justify an inference of their truth.

> (2) . . . If the independent evidence raises an inference of the truth of some but not all of the essential facts admitted, then the confession or admission may be considered as evidence against the accused only with respect to those essential facts stated in the confession or admission that are corroborated by the independent evidence.

"What constitutes an essential fact of an admission or confession necessarily varies by case. Essential facts we have previously considered include the time, place, persons involved, access, opportunity, method, and motive of the crime." *United States v. Adams*, 74 M.J. 137, 140 (C.A.A.F. 2015) (citations omitted).

> The corroboration requirement for admission of a confession at court-martial does not necessitate independent evidence of all the elements of an offense or even the *corpus delicti* of the confessed offense. Rather,

> the corroborating evidence must raise only an inference
> of truth as to the essential facts admitted.

*Id.* at 140 (quoting *United States v. Cotrill*, 45 M.J. 485, 489 (C.A.A.F. 1997).

As an initial matter, we find the military judge did not abuse his discretion in admitting the DVD of the interview of CP and AP, the forensic interviewer. "We accord a military judge 'considerable discretion' in admitting evidence as residual hearsay." *United States v. Donaldson*, 58 M.J. 477, 488 (C.A.A.F. 2003).

CP's statement to AP corroborates appellant's confession with respect to the place of the assault, person's involved, appellant's access, and method of the assault. While CP did not state that appellant penetrated her vagina with his finger, her statement nonetheless suffices in corroborating appellant's confession to rape. We do not believe appellant's statement to CID was a false confession or a product of a coercive interrogation and conclude that the military judge's decision to admit appellant's statement was well within the bounds of sound discretion and therefore not erroneous.

### B. CP's Statement Admitted as an Excited Utterance

As the military judge admitted CP's statement to MB under Mil. R. Evid. 803(2), we review his decision in light of the military judge's application of the three-part test for admission of such evidence.

> An otherwise inadmissible hearsay statement is admissible
> under [Mil. R. Evid.] 803(2), even though the declarant is
> available as a witness, if (1) the statement relates to a
> startling event, (2) the declarant makes the statement while
> under the stress of excitement caused by the startling event,
> and (3) the statement is spontaneous, excited or impulsive
> rather than the product of reflection and deliberation.

*United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003) (citations and internal quotation marks omitted). "The implicit premise [of Mil. R. Evid. 803(2)] is that a person who reacts 'to a startling event or condition" while 'under the stress of excitement caused' thereby will speak truthfully because of a lack of opportunity to fabricate." *United States v. Jones*, 30 M.J. 127, 129 (C.M.A. 1990). There is a strong presumption against admitting statements under Mil. R. Evid. 803(2) when the statement is not made immediately after the startling event. *Id.* at 128. Where the declarant is a child, courts have shown more flexibility in this regard, particularly when the statement was made at the child's first opportunity alone with a trusted adult. The lapse of any particular period of time, however, is not the focus of Mil. R. Evid 803(2). *United States v. Feltham*, 58 M.J. 470, 475 (C.A.A.F. 2003).

8

Instead, '[t]he critical determination is whether the declarant was under the stress or excitement caused by the startling event." *Id.*

We find that the military judge abused his discretion in admitting Ms. CP's statement as an excited utterance. First, the military judge made an arbitrary factual determination in finding CP's statement to MB was "close enough" in relation to the sexual assault. If, as appellant stated to CID, the assault occurred in mid-February 2008, this would mean up to two weeks elapsed before CP reported. It is also possible that CP truly did report the assault within hours after it occurred. The point is that we have no way of divining what "close enough" means when reviewing the testimony and evidence adduced at trial.[2]

For this same reason, we find the military judge improperly applied the test for the admission of an excited utterance. Without knowing what happened to CP between the assault and eventual declaration to MB, the military judge had no way of assessing whether CP was laboring under the stress or excitement caused by the assault or had time to reflect on what had occurred. To be sure, without knowing how much time elapsed between the assault and CP's report, the military judge had no way of determining whether CP's demeanor, when she revealed the assault to MB, truly reflected stress or excitement from the assault, or whether it was the result of other factors, such as her mother's arrest by the police.

As we find the military judge abused his discretion in admitting CP's statement as an excited utterance, we review the prejudicial effect of that ruling de novo. Prejudice from an erroneous evidentiary ruling is evaluated by weighing "(1) the strength of the government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Roberson*, 65 M.J. at 47-48 (quotation marks and citations omitted).

Evaluating these factors, we find the error in admitting CP's statement to MB to be harmless. First, the government's case, even though impacted by passage of time and fading memories, was still very strong by virtue of the appellant's confession. By contrast, the defense case was not particularly strong as appellant's denial of having abused CP and his claim his confession was false were not credible. While CP's statement to MB was material to the issue of rape, this evidence was similar and was largely cumulative with the testimony of AP that was admitted as

---

[2] We note that trial counsel used a police incident report, Prosecution Exhibit 11 for identification, to refresh MB's recollection that CP disclosed the abuse on 1 March 2008. The report indicates that the incident occurred on 29 February 2008. It is entirely possible that MB, at the time the report was made, had information that the abuse in fact occurred on this date. However, we need not speculate as this exhibit was only used to refresh MB's recollection and was not admitted into evidence.

residual hearsay. To be sure, the videotaped interview was far more telling concerning CP's recollection of the assault than the faded memories of Ms. MB and CP in recalling the events of five years earlier. Accordingly, we find appellant was not prejudiced by the military judge's admission of CP's statement to MB.

## CONCLUSION

The findings and sentence are correct in law and fact and are AFFIRMED.

Judge PENLAND and Judge BURTON concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court