*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

### UNITED STATES
Appellee

**v.**

### Randy E. JONES, Chief Warrant Officer Two
United States Army, Appellant

**No. 17-0608**

Crim. App. No. 20150370

Argued April 4, 2018—Decided July 31, 2018

Military Judges: Christopher T. Fredrikson and
James W. Herring Jr.

For Appellant: *Captain Zachary A. Gray* (argued); *Lieutenant Colonel Tiffany M. Chapman*, *Captain Cody Cheek,* and *Captain Joshua B. Fix* (on brief); *Lieutenant Colonel Christopher D. Carrier* and *Captain Bryan Anthony Osterhage*.

For Appellee: *Captain Jeremy S. Watford* (argued); *Lieutenant Colonel Eric K. Stafford* and *Major Cormac M. Smith* (on brief).

Amicus Curiae for Appellant: *Girija Hathaway* (law student) (argued); *Jacob Smith* (law student) and *Stephen I. Vladeck*, Esq. (supervising attorney) (on brief) — the University of Texas at Austin, School of Law.

Judge MAGGS delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN, OHLSON, and SPARKS, joined.

———————————

Judge MAGGS delivered the opinion of the Court.[1]

A military judge sitting as a general court-martial found Appellant guilty, contrary to his pleas, of one specification of larceny of military property of a value of more than $500 and one specification of larceny of military property of a

---

[1] We heard oral argument in this case at the University of Texas at Austin, School of Law, Austin, Texas, as part of the Court's Project Outreach. This practice was developed as a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

value of $500 or less, in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921 (2012). The military judge found Appellant not guilty of one specification of conspiracy to commit the charged larceny offenses under Article 81, UCMJ, 10 U.S.C. § 881 (2012). The military judge sentenced Appellant to be reprimanded, confined for seventeen days, and dismissed from the service. The convening authority approved the finding of guilt for the lesser of the two Article 121, UCMJ, offenses as adjudged. With respect to the greater Article 121, UCMJ, offense, the convening authority approved "only so much of the finding . . . as finds a larceny of military property of a value of $500 or less." The convening authority approved the sentence as adjudged. The United States Army Court of Criminal Appeals summarily affirmed the findings and the sentence as approved by the convening authority. *United States v. Jones*, No. ARMY 20150370, slip op. at 1 (A. Ct. Crim. App. Aug. 3, 2017) (per curiam).

On appeal, Appellant argues that the military judge erred in admitting statements that he and his alleged coconspirator, Master Sergeant (MSG) Kenneth Addington, made to agents of the Army Criminal Investigation Command (CID) in Kandahar, Afghanistan. Appellant asserts his statement lacked corroboration as required by the version of Military Rule of Evidence (M.R.E.) 304(c) that was in effect at the time of his trial in 2015.[2] He further asserts that MSG Addington's statement was inadmissible hearsay and that its admission violated his Sixth Amendment right of confrontation. We conclude that the military judge did not err in admitting Appellant's statement. We further conclude that the military judge improperly admitted MSG Addington's statement, but we find that the error was harmless beyond a reasonable doubt.

---

[2] Appellant was tried in May 2015. The version of M.R.E. 304 applicable to his case is found in Exec. Order No. 13,643, 78 Fed. Reg. 29,559 (May 15, 2013), and printed in the *Supplement to Manual for Courts-Martial, United States, Military Rules of Evidence* (2012 ed.). In 2016, the President amended M.R.E. 304 in Exec. Order No. 13,730, 81 Fed. Reg. 33,331 (May 20, 2016). This opinion does not address the 2016 amendment, which is printed in the *Manual for Courts-Martial, United States* (2016 ed.) (*MCM)*.

## I. Background

Appellant is a civilian high school teacher and an Army reservist. In October 2013, he deployed to Afghanistan and served as the officer in charge of his unit's woodshop. The unit used woodworking tools that previous units had left behind. The woodshop also included tools that Appellant and others had salvaged from a nearby Retro-Sort Yard (RSY). The RSY held miscellaneous equipment and materials, some of which were set to be destroyed when the unit departed.

The larceny specifications of which Appellant was found guilty state that Appellant "did, at or near Kandahar Airfield, Afghanistan, on divers occasions between on or about 1 December 2013 and on or about 20 April 2014, steal tools and other equipment, military property." The Government's theory was that Appellant stole tools from the woodshop, that he mailed the tools to his home in North Carolina, and that he intended to keep at least some of the tools for use by students at the high school where he teaches.

At trial, the military judge admitted a redacted version of a sworn statement that Appellant had made to a CID agent at the Kandahar CID Office. In the statement, Appellant admitted that "over the past months" he had mailed tools to his home address. These tools included various saws, drills, screwdrivers, and wrenches; a sander and an angle grinder; and various batteries and accessories. Appellant estimated that the value of the equipment, if new, was "around $2,030.00." The redacted statement further contains the following questions and answers:

> Q: What did you intend to do with this property?
>
> A: I intended it to be used by the Soldiers at the unit or the students at school.
>
> . . . .
>
> Q: Where did you get the tools?
>
> A: From the woodshop.
>
> Q: How did they get to the woodshop?
>
> A: We fell in on the tools at the woodshop.

The military judge determined that the redacted statement was admissible notwithstanding the limitation in M.R.E.

304(c) because independent evidence corroborated the essential facts of the statement.

The military judge also admitted a redacted statement by MSG Addington. In this statement, MSG Addington described how he and Appellant jointly obtained some of the tools from the woodshop and the RSY. The military judge concluded that the hearsay rule did not apply to MSG Addington's statement because M.R.E. 801(d)(2)(E) excludes from the definition of hearsay a statement "made by the party's co-conspirator during and in furtherance of the conspiracy."

Other testimony and physical evidence at trial showed that Appellant mailed seventeen boxes from Afghanistan to his home in North Carolina, that he paid $579.38 of his own money to mail the boxes, and that the boxes contained more than 850 tools or other items. Evidence also showed that Appellant had talked to his unit's leadership about creating a garrison woodshop when the unit returned from Afghanistan, but the leadership did not approve this plan. In addition, a senior noncommissioned officer testified that he had informed Appellant of the proper procedures for returning military property from Afghanistan to the garrison.

The Government did not present any testimony or other evidence, apart from Appellant and MSG Addington's statements, that directly showed where Appellant acquired the tools that he mailed home or that the tools were military property. The woodshop did not keep inventory records that could demonstrate that specific tools were missing.

On appeal, Appellant argues that the military judge improperly admitted the statements that he and MSG Addington made to the CID agents. Appellant objected to admitting these statements at trial under M.R.E. 304(c) and M.R.E. 802.

## II. Admission of Appellant's Statement

Appellant contends that, under M.R.E. 304(c), the military judge should not have admitted the portions of his statement to the CID agent in which he admitted that he got the tools "from the woodshop" and that he "intended [the tools] to be used by the Soldiers at the unit or the students

at school," because these statements were not adequately corroborated by independent admissible evidence. Appellant further argues that, without these portions of his statement, the Government did not prove all five elements of the offense of larceny of military property.[3] We review the military judge's determination that M.R.E. 304(c) did not bar admission of the statement for an abuse of discretion. *See United States v. Adams*, 74 M.J. 137, 139 (C.A.A.F. 2015) (citing *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003)).

## A. M.R.E. 304(c)'s Corroboration Requirement

M.R.E. 304(c) is a complicated provision that has three parts relevant to this appeal. First, M.R.E. 304(c)(1) contains a general requirement of corroboration:

> An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been admitted into evidence that corroborates the essential facts admitted to justify sufficiently an inference of their truth.

---

[3] The elements of larceny of military property are:

(a) That the accused wrongfully took, obtained, or withheld certain property from the possession of the owner or of any other person;

(b) That the property belonged to a certain person;

(c) That the property was of a certain value, or of some value; and

(d) That the taking, obtaining, or withholding by the accused was with the intent permanently to deprive or defraud another person of the use and benefit of the property or permanently to appropriate the property for the use of the accused or for any person other than the owner.

(e) That the property was military property.

*MCM* pt. IV, para. 46.b.(1)(a)−(e) (2012 ed.). The value of the property is not an element of the offense. But larceny of property having a value of more than $500 carries a larger sentence than larceny of property having a lesser value. *See id.* para. 46.e.(1)(a),(c).

The requirement of corroboration addresses traditional concerns about the possible untrustworthiness of admissions and confessions. The Supreme Court has explained: "In our country the doubt persists that the zeal of the agencies of prosecution to protect the peace . . . or the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of [a] confession." *Opper v. United States*, 348 U.S. 84, 89−90 (1954).

Second, M.R.E. 304(c)(2) requires corroboration of each essential fact in an admission or confession.[4] The second sentence of this provision says:

> If the independent evidence raises an inference of the truth of some but not all of the essential facts admitted, then the confession or admission may be considered as evidence against the accused only with respect to those essential facts stated in the confession or admission that are corroborated by the independent evidence.

To comply with this provision, a military judge can redact a statement by excising the uncorroborated portions and then admitting the redacted statement into evidence. *See Adams*, 74 M.J. at 140.

Third, only a small quantum of evidence is needed to corroborate an essential fact in a confession or admission. M.R.E. 304(c)(4) provides in relevant part: "The independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession. The independent evidence need raise only an inference of the truth of the essential facts admitted." In addition, as M.R.E.

---

[4] In *Adams*, this Court held: "There is no 'tipping point' of corroboration which would allow admission of the entire confession if a certain percentage of essential facts are found to be corroborated. If four of five essential facts were corroborated, the entire confession is not admissible. Only the four corroborated facts are admissible . . . ." 74 M.J. at 140. The 2016 amendments to M.R.E. 304, which are not applicable to this case, address this rule. As amended, M.R.E. 304(c)(2) provides: "Not every element or fact contained in a confession or admission must be independently proven for the confession or admission to be admitted in evidence in its entirety." *See supra* note 2.

304(c)(1) makes clear, this corroborating evidence can be "either direct or circumstantial." We traditionally have described the quantum of evidence needed as being "slight." *Adams*, 74 M.J. at 140.

**B. Military Property**

A key element of the offense of larceny of military property is, of course, that "the property was military property." *MCM* pt. IV, para. 46.b.(1)(e). To prove this element, the Government relied on Appellant's admission in his statement to the CID agent that he acquired the tools that he sent home "[f]rom the woodshop." Witnesses testified that the tools in the woodshop were military property. But Appellant asserts that no independent admissible evidence corroborated the essential fact in his admission that the tools at his home came from the woodshop.[5] He emphasizes that the woodshop did not keep an inventory and thus could not identify any tools as missing. Without corroboration of the essential fact of where the tools came from, Appellant argues that his statement was inadmissible under M.R.E. 304(c)(1).

Our precedents have addressed the issue of what can corroborate an admission that stolen property is military property. Two cases with similar facts are *United States v. Leal*, 7 C.M.A. 15, 21 C.M.R. 141 (1956), and *United States v. Evans*, 1 C.M.A. 207, 2 C.M.R. 113 (1952). In *Leal*, the accused was assigned to a unit responsible for maintaining communications equipment. He admitted to stealing a large number of vacuum tubes from his unit's workshop, but no inventory records could confirm that the tubes were missing. This Court held that the accused's admission that the property was military property was sufficiently corroborated by independent evidence "that the equipment was of the type and kind of Government property to be found within the unit workshop; that the accused had access to this equipment; that he had opportunity safely to remove it from the premises; [and] that he was not authorized to possess the property." 7 C.M.A. at 20, 21 C.M.R. at 146. In *Evans*, the accused admitted that he and others had stolen cigarettes

---

[5] MSG Addington's statement would provide corroboration, but we agree with Appellant that MSG Addington's statement was inadmissible. *See infra* Part III.

that were military property but no inventory records could confirm that "cigarettes of the quantity alleged to be stolen were missing from the Army warehouse." 1 C.M.A. at 209, 2 C.M.R. at 115. This Court held that the accused's admission that the stolen property was military property was corroborated by "the employment of [the accused and the other] soldiers in a position where they had access to great quantities of cigarettes thus furnishing opportunity to perpetrate the offense charged" and by other independent evidence. *Id.*, 2 C.M.R. at 115.

As in *Leal* and *Evans*, independent circumstantial evidence corroborated the essential fact of Appellant's admission that the tools he sent home came from the woodshop. Appellant had access to the tools in the unit woodshop because he was the officer in charge of the unit woodshop. Most of the tools that the Government found at Appellant's home were carpentry tools like those in the unit woodshop. The woodshop would be a likely place in the deployed environment in Afghanistan to acquire woodworking tools. These circumstances by themselves alone may not prove beyond a reasonable doubt that Appellant took the tools from the woodshop. But in accordance with M.R.E. 304(c), they support an inference that Appellant was speaking the truth when he confessed that he took them from the woodshop.

## C. Intent to Steal

Another element of the offense of larceny of military property is that "the taking . . . by the accused was with the intent permanently . . . to appropriate the property for the use of the accused or for any person other than the owner." *MCM* pt. IV, para. 46.b.(1)(d). To prove this element, the Government relied on the portion of Appellant's statement to the CID agent in which he asserted that he intended for the tools "to be used by . . . the students at school." This admission shows that Appellant intended to appropriate at least some of the tools for use by persons other than the owner, the United States Government. Appellant argues that the military judge should not have admitted this portion of his statement because it lacked corroboration by independent admissible evidence.

8

A complication in resolving this issue is that the parties have expressed different views about how to identify the essential fact in Appellant's admission. The Government asserts that the essential fact is "appellant's intent to permanently deprive the military of the stolen property." Appellant, in contrast, contends that the essential fact is more specific; it is that Appellant "intend[ed] to use the tools for his students." In some instances, disagreements about how to describe the essential fact in an admission may have material consequences. But in this case, we need not resolve the question. Under either party's characterization the statement was admissible under M.R.E. 304(c).

If the essential fact is that Appellant had the intent permanently to deprive the military of its property, there was enough independent evidence to support an inference of this essential fact. Appellant spent $579.38 of his own funds to mail fourteen separate shipments of military equipment. Appellant sent the tools to his personal address, rather than to the address of his unit. The tools remained at his home or nearby until discovered by investigators. Appellant was informed of the proper procedures for sending military material back to the unit, but he did not use those procedures. The unit leadership also had not approved any plan for using the tools at the unit. This circumstantial evidence supports an inference that Appellant intended to deprive the military of the property permanently. *See MCM* pt. IV, para. 46.c.(1)(f)(ii) ("An intent to steal may be proved by circumstantial evidence."); *see also United States v. Pacheco*, 56 M.J. 1, 3 (C.A.A.F. 2001) (circumstantial evidence that the accused did not return a firearm and did not inform the authorities that he took it showed an intent permanently to deprive the military of the property); *see also United States v. Cosby*, 14 M.J. 3, 5 (C.M.A. 1982) (circumstantial evidence that the accused acquired two military winches by paying another servicemember to allow him to take them and that the accused had no legitimate use for the winches showed an intent permanently to deprive the military of the property).

Even if the essential fact is characterized more narrowly as being that Appellant specifically intended that his students would use the equipment at his school, sufficient independent evidence also supports "an inference of the truth" of

this essential fact. *See* M.R.E. 304(c)(2). Appellant was a high school woodshop teacher. He sent the tools to his home. The tools were of the kind that could be used in the high school woodshop. And the tools were not returned to the Government. This circumstantial evidence establishes that Appellant had access to the school, an opportunity to provide tools to students at the school permanently, and a possible motive for doing so. This case is thus very different from *Adams*, in which there was no evidence of motive, access, and opportunity to corroborate the essential facts of the appellant's confession. *See* 74 M.J. at 141. We therefore hold that the military judge properly admitted the redacted version of Appellant's statement to the CID agent in Kandahar in compliance with M.R.E. 304(c).

### III. MSG Addington's Statement

At trial, Appellant objected to the admission of MSG Addington's statement on grounds that it was hearsay, but the military judge overruled the objection and admitted the statement. The Government now concedes, and we agree, that the military judge erred in this ruling. The statement was not made "during and in furtherance" of a conspiracy but instead was made to the CID agent who was investigating the possible conspiracy after it had concluded. M.R.E. 801(d)(2)(E); *see Fiswick v. United States*, 329 U.S. 211, 217 (1946). "There can be no furtherance of a conspiracy that has ended." *Lutwak v. United States*, 344 U.S. 604, 617 (1953); *see also* 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:61 (4th ed. 2013) ("When a conspirator knowingly speaks to law enforcement agents, what he says almost always fails the furtherance requirement. In many such cases, the speaker's purpose is almost the opposite of furthering the venture . . . ."). MSG Addington's statement therefore was not properly admitted under M.R.E. 801(d)(2)(E). The statement was hearsay, and should have been excluded under the rule against hearsay in M.R.E. 802.

In addition, Appellant and Amicus Curiae argue that admitting MSG Addington's statement also violated Appellant's rights under the Sixth Amendment's Confrontation Clause. *See* U.S. Const. amend. 6. Even though we have found error under M.R.E. 802, we must address this additional argument to determine the appropriate standard of

review. When hearsay is admitted in violation of the Military Rules of Evidence, the ordinary rule is that we can affirm only if we do not find "material prejudice[]." Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2012) ("A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."); *see also United States v. Lovett*, 59 M.J. 230, 234 (C.A.A.F. 2004). But as described below, if admission of the evidence also violates the Constitution, and the error is not waived, the standard of review is higher.

Appellant has cited nothing in the record of trial that indicates Appellant made a Confrontation Clause objection before or during the trial. When an appellant does not raise an objection to the admission of evidence at trial, we first must determine whether the appellant waived or forfeited the objection. *See United States v. Sweeney*, 70 M.J. 296, 303–04 (C.A.A.F. 2011). If the appellant waived the objection, then we may not review it at all. *See United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009). But if the appellant merely forfeited the objection, then we may review the objection for plain error. *See Sweeney*, 70 M.J. at 304.

Waiver can occur either by operation of law, *see, e.g.*, *United States v. Hardy*, 77 M.J. 438, 441–42 (C.A.A.F. 2018), or by the "intentional relinquishment or abandonment of a known right," *Sweeney*, 70 M.J. at 303 (internal quotation marks omitted) (citations omitted). We do not see any waiver by operation of law here. We thus must consider whether Appellant intentionally relinquished or abandoned his Confrontation Clause objection. In previous cases in which an appellant failed to raise a Confrontation Clause objection at trial, we have considered the particular circumstances of each case to determine whether there was a waiver. *See, e.g., United States v. Harcrow*, 66 M.J. 154, 158 (C.A.A.F. 2008); *Sweeney*, 70 M.J. at 304. We have also applied a presumption against finding a waiver of constitutional rights. *See Sweeney,* 70 M.J. at 304. A waiver of a constitutional right is effective if it "clearly established that there was an intentional relinquishment of a known right." *Id.* at 303–04 (internal quotation marks omitted) (citation omitted). In certain and exceptional circumstances, counsel

may waive a constitutional right on behalf of a client. *See Harcrow*, 66 M.J. at 157 (recognizing that counsel may waive his client's constitutional rights by stipulating to the admission of evidence when the client does not oppose the stipulation and counsel's decision was part of a legitimate trial tactic or part of a prudent trial strategy). Considering the particular circumstances here, we can see no strategic reason that defense counsel would object to MSG Addington's statement as hearsay and not also object to the statement on Confrontation Clause grounds. We therefore infer that the failure to make the Confrontation Clause objection was unintentional, and we conclude that Appellant forfeited the objection rather than waived it. We therefore will apply plan error review.

Plain error occurs "where (1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of the accused." *Sweeney*, 70 M.J. at 304 (citation omitted). Here, there was error, and the error was plain or obvious. Admitting MSG Addington's statement violated the Confrontation Clause as interpreted in *Davis v. Washington*, 547 U.S. 813, 821−22 (2006), and *Crawford v. Washington*, 541 U.S. 36, 53−54 (2004). The statement was testimonial, because the primary purpose of the CID agent's interrogation of MSG Addington was to ascertain facts relevant to a later prosecution. *See Davis*, 547 U.S. at 822. And Appellant did not have the opportunity to cross-examine MSG Addington about the statement. *See Crawford*, 541 U.S. at 53−54. When a constitutional issue is reviewed for plain error, the prejudice analysis considers whether the error was harmless beyond a reasonable doubt. *United States v. Payne*, 73 M.J. 19, 25–26 (C.A.A.F. 2014). We will apply this standard of review to the admission of MSG Addington's statement.

In this case, MSG Addington's statement was not necessary to prove the larceny specifications. Those specifications were proved beyond a reasonable doubt by Appellant's statement to the CID agent and other evidence. MSG Addington's statement was also not necessary to corroborate Appellant's statement. As explained above, other independent evidence that did not come from MSG Addington's statement corroborated Appellant's statement to the CID

agent. To be sure, MSG Addington's statement did provide evidence to support the conspiracy charge. But as the military judge found Appellant not guilty of the conspiracy charge, admission of MSG Addington's statement was inconsequential. We thus conclude that admission of MSG Addington's statement to the CID agent in violation of M.R.E. 802 and the Confrontation Clause did not materially prejudice Appellant and, indeed, was harmless beyond a reasonable doubt.[6]

## IV. Judgment

The judgment of the United States Army Court of Criminal Appeals is affirmed.

---

[6] Because the more stringent harmless beyond a reasonable doubt standard subsumes the harmlessness standard for nonconstitutional error, we likewise conclude that Appellant was not prejudiced by the M.R.E. 802 error.