UNITED STATES, Appellee

v.

Anthony T. HALL, Lance Corporal
U. S. Marine Corps, Appellant

No. 07-0384

Crim. App. No. 200600805

United States Court of Appeals for the Armed Forces

Argued January 8, 2008

Decided February 25, 2008

BAKER, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel


For Appellant:  Captain S. Babu Kaza, USMC (argued).


For Appellee:  Lieutenant Timothy H. Delgado, JAGC, USN
(argued); Colonel Louis J. Puleo, USMC, (on brief); Commander
Paul C. LeBlanc, JAGC, USN, and Lieutenant Tyquili R. Booker,
JAGC, USN.



Military Judge:  B. W. MacKenzie



THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge BAKER delivered the opinion of the Court.

Contrary to his pleas, Appellant was convicted by general court-martial with members of making a false official statement and maiming, in violation of Articles 107 and 124, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 924 (2000). He was sentenced to confinement for forty-two months and a bad-conduct discharge. This sentence was approved by the convening authority as adjudged. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the approved findings and sentence. United States v. Hall, No. NMCCA 200600805 (N-M. Crim. Ct. App. Mar. 20, 2007).

We granted review of the following issues:

I. WHETHER THE LOWER COURT ERRED IN STATING THAT APPELLANT HAD RECEIVED A DISHONORABLE DISCHARGE AT TRIAL, WHEN THE MEMBERS SENTENCED HIM TO A BAD-CONDUCT DISCHARGE, AND THE CONVENING AUTHORITY APPROVED ONLY A BAD-CONDUCT DISCHARGE.[1]

II. WHETHER THE LOWER COURT ERRED IN FINDING THAT THE MILITARY JUDGE'S DECISION TO ALLOW, OVER DEFENSE OBJECTION, A NON[-] EXPERT NCIS AGENT TO PROVIDE EXPERT TESTIMONY TO THE MEMBERS WAS HARMLESS, WHERE THIS WAS IN VIOLATION OF MILITARY RULE OF EVIDENCE 701(C), AND THE GOVERNMENT HAS CONCEDED THAT THIS TESTIMONY WAS BOTH MATERIAL TO ITS CASE AND WAS OF HIGH QUALITY.

Recognizing the Government's concession of error regarding Issue II, we conclude that the lower court did not err in finding this error harmless and we affirm.

---

[1] We did not order briefs on this issue and we resolve it in the decisional paragraph of this opinion.

2

BACKGROUND

While on convalescent leave for a rotator cuff injury, Appellant cared for AC, the nine-month-old son of a civilian living at Pearl Harbor whose wife was deployed. On April 9, 2005, the child suffered second-degree burns on his left foot, buttocks, and thigh. According to Appellant, the infant suffered the burns when he attempted to bathe the child by placing him in two to three inches of hot water. However, as recounted below, inconsistencies in Appellant's account as well as the nature of the child's burns raised suspicions. Appellant was subsequently charged with maiming.

At trial the Government presented the following evidence. First, the victim's father, testified about Appellant's failure to take his son to the hospital at the first discovery of the burns. According to AC's father, when asked, Appellant's reasoning was that he "didn't have his ID card." The child did not receive medical attention until nearly four hours after the infliction of injuries. AC's father also testified to the severity of the burns, the scarring that remains, and the ability and inclination of his son when responding to the stimulus of hot bath water. Second, Special Agent (SA) Mark Victor Politi, Naval Criminal Investigation Service (NCIS), testified that during questioning, Appellant told him that he had intended to bathe the child and that he had felt the water

as he put a stopper in the sink.  Third, the Government called SA Allexis Rizas.  SA Rizas has a master's degree in forensic science with experience and training in child burn cases.  Over defense counsel's objection, SA Rizas testified that she believed the burns on the child were a "textbook case of an immersion burn with clear lines of demarcation and a lack of splash marks .  .  . indicative of non-accidental trauma."  The military judge admitted this testimony as layperson opinion under Military Rule of Evidence (M.R.E.) 701.

Finally, the Government called Dr. Victoria Schneider who also testified to the absence of splash marks as a sign of nonaccidental burns.  Dr. Schneider, however, further stated that the lack of splash marks indicated that the child had been held still in the hot water.

DISCUSSION

In light of the Government's concession that the military judge erred in admitting SA Rizas's testimony under M.R.E. 701, we will move directly to the assigned issue:  was the error harmless?  "Whether an error, constitutional or otherwise, was harmless, is a question of law that we review de novo. . . . For nonconstitutional errors, the Government must demonstrate that the error did not have a substantial influence on the findings."  United States v. McCollum, 58 M.J. 323, 342 (C.A.A.F. 2003) (citation omitted); United States v. Walker, 57

4

M.J. 174, 178 (C.A.A.F. 2002) (citing Kotteakos v. United States, 328 U.S. 750, 765 (1946)).

This Court evaluates claims of prejudice from an evidentiary ruling by weighing four factors:  "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question.  We apply the same four-pronged test for erroneous admission of government evidence as for erroneous exclusion of defense evidence."  United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F. 1999) (citations omitted).

The Government concedes that the testimony of SA Rizas was material.  With respect to the other three Kerr factors, the Government argues that its case is strong notwithstanding SA Rizas's testimony, Appellant's statement of events is incredible, and in light of Dr. Schneider's testimony, SA Rizas's testimony was of little qualitative value.

Not surprisingly, Appellant takes a different view with respect to the relative strength of the Government's case and the quality of his case at trial.  However, the focus of Appellant's argument is on the qualitative nature of SA Rizas's testimony.  Specifically, Appellant argues, SA Rizas's testimony was prejudicial because she failed to qualify her conclusion and therefore foreclosed the possibility that Appellant held the child in the water momentarily before realizing the hot

temperature and removing him.  Essentially, Appellant argues
that SA Rizas's testimony suggested malice on his part while Dr.
Schneider's testimony does not.

In applying the Kerr factors we conclude that the lower
court did not err in holding that the admission of SA Rizas's
testimony was harmless error.  First, the Government's case was
strong, if not overwhelming.  The father of the burned child
testified to AC's developed strength and awareness, making it
doubtful that the child remained still while being placed into
water hot enough to burn him in a matter of seconds:

        A:  My son -- he is very, very aware.  In fact,
        if my son was getting placed in cold water, he
        would probably try to squirm and try to get up
        and remove himself from it. . . .

        DC:  Did you ever observe your child react to . .
        . to water either too cold or too hot?

        A:  Yes, I did.

        Q:  All right.  Explain what happened in those
        instances.

        A:  What he did was he was trying to -- he'd
        groan, and he would try to push himself up and
        get out of the water.

        Q:  Would he ever just sit still?

        A:  No, he would not, no.

        Q:  Would he just freeze up and sit there?

        A:  No.

        Q:  Any possibility?

6

A:  No, none.

Dr. Schneider testified that the victim's injuries, "because of their pattern, because of the uniformity of the depth of the burn, because of the clear demarcation, because of the -- what they call sink marks, those straight lines across -- that you saw across the waist demarking the unburned skin from the burned skin -- that's all consistent with non-accidental etiology with someone holding him in a hot liquid."  When Dr. Schneider qualified what she meant by "non-accidental," she did not exclude the possibility of malice as suggested by Appellant. Her testimony actually suggested intentional behavior as the cause of the injuries:

> A:  Well, it was significant that he was able to
> pull himself up, and he readily does pull himself
> up.  So you would expect if he were placed
> accidentally into hot liquid that there would be
> a lot of movement.  He would not stay still in
> that water on his own accord.
>
> Q:  Can you say within medical reasonable
> certainty that -- you would have seen -- had the
> child not been held still, you would have seen a
> wavy pattern on his body?
>
> A:  You would have seen splash marks if the water
> was very hot.  You would have seen other evidence
> of movement of the child on the skin.

Dr. Schneider's testimony was also supported by photographs of the victim showing a uniform pattern of blistering.

In contrast, the defense case was weak, even implausible. The alternative theories advanced by the defense were that

Appellant was either unable to lift the child out of the water before the child was burned or that he left the room briefly during which time the child was burned.  Yet, the father testified to the fact that he often observed Appellant carrying his son without difficulty or pain.  Further, Appellant admitted to SA Politi that he was able to take the child out of the water immediately in two or three past instances when the child reacted to the temperature of the water.

The defense also advanced the theory that AC was only in the water for seconds.  However, Dr. Schneider's testimony regarding the lack of splash marks cast serious doubt on this version of events.  The doctor also testified that the severity of the burns on the child could have only been caused by either a short amount of time in scalding hot water or a longer amount of time in lesser temperatures.  Specifically, the burns could have been caused by ten minutes in temperatures as low as 120 degrees or by two seconds in 150-degree water.  If Appellant had tested the water when he put the plug in the drain, as he told SA Politi, he likely would have discerned the heat of water that could have inflicted severe burns on a child in only seconds.  Appellant's position fails to account for the severe burns inflicted on the child victim.

With respect to the third Kerr factor, the Government has conceded the materiality of SA Rizas's testimony, and correctly

8

so.  SA Rizas's testimony directly expressed an opinion regarding the cause of the victim's injuries as well as Appellant's criminal culpability in causing the injuries. Standing alone, such testimony might well have been determinative.

But the testimony did not stand alone.  Turning to the fourth Kerr factor, we are persuaded that the testimony of SA Rizas would not have substantially influenced the verdict.  We reach this conclusion in light of the other evidence presented by the Government, the nature of Appellant's defense, and in particular, the duplicative quality of SA Rizas's testimony when compared to that of the actual expert in the case, Dr. Schneider.  Among other things, SA Rizas's testimony did not suggest the cause of the injuries, only that they were not accidental.  Whereas, Dr. Schneider's testimony did account for causation.  In addition to stating a firm belief that the burns were "non-accidental," Dr. Schneider attributed additional significance to the absence of wave or splash marks, testifying essentially that the child was held in hot water.  Furthermore, both SA Rizas and Dr. Schneider testified to their professional training and qualifications to assess the circumstances that caused AC's burns.  In light of the qualitative difference in professional background and expertise, as well as the overlap in testimony between Dr. Schneider and SA Rizas, we are persuaded

9

that SA Rizas's testimony regarding nonaccidental burn indications was not qualitatively significant in the context of this case.  As a result, the Government has met its burden of demonstrating that SA Rizas's testimony did not have a substantial influence on the findings.

## DECISION

Based on the above analysis, we conclude that the erroneous admission of SA Rizas's opinion testimony was harmless. Regarding Issue I, the lower court's opinion erroneously indicates that the adjudged and approved sentence included a dishonorable discharge.  Therefore, the decision of the United States Navy-Marine Corps Court of Criminal Appeals as to the findings is affirmed.  As for the lower court's decision on the sentence, we affirm only so much of the sentence extending to what the convening authority approved, confinement for forty-two months and a bad-conduct discharge.