# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Senior Airman CHRISTOPHER R. PEREZ
### United States Air Force

## ACM 38559

## 12 August 2015

Sentence adjudged 18 October 2013 by GCM convened at Dyess Air Force Base, Texas. Military Judge: Donald R. Eller, Jr. (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 3 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Isaac C. Kennen and Captain Travis L. Vaughan.

Appellate Counsel for the United States: Major Meredith L. Steer and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

TELLER, J., delivered the opinion of the court, in which HECKER, S.J., joined. ALLRED, C.J., filed a separate concurring opinion.

The appellant was convicted, contrary to his pleas, at a general court-martial comprised of a military judge sitting alone, of child endangerment and adultery in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1] The court sentenced him to a

---

[1] The appellant was found not guilty of dereliction of duty for failure to report known or suspected child neglect. The appellant was also found not guilty of the words "grievous bodily" in the specification alleging grievous bodily harm to the eldest child.

dishonorable discharge, 3 years of confinement, forfeiture of all pay and allowances, and reduction to E-1. The sentence was approved as adjudged.

The appellant raised nine assignments of error, ranging from factual and legal sufficiency to unreasonable multiplication of charges and violation of his rights under Article 31, UCMJ, 10 U.S.C. § 831. The court specified an additional issue: whether, in light of *United States v. Adams*, 74 M.J. 137 (C.A.A.F. 2015) (Baker, C.J., dissenting), the military judge erred in admitting certain statements by the appellant without corroboration. Because we find that the military judge erred in admitting the uncorroborated statements, we do not reach the appellant's assertions of error.

*Background*

On 28 August 2012, Dyess Air Force Base (AFB) emergency personnel responded to the on-base home of Tiffany Klapheke, the civilian wife of a deployed Airman. When they arrived, they found her on the floor of the kitchen holding the lifeless body of her 22-month-old daughter. Her other two daughters, ages three years and six months respectively, were alive, but both required emergency medical intervention due to severe neglect. Later medical examinations would show that the 22-month-old had died of dehydration and malnutrition.

Detectives from the Abilene Police Department (APD), which retains jurisdiction for criminal offenses on Dyess AFB, also responded to the scene. Both APD and the Air Force Office of Special Investigations (AFOSI) initiated investigations. APD opened a criminal investigation due to the severe neglect of the children and its apparent role in causing the death of the 22-month-old child. AFOSI opened an independent investigation pursuant to its own requirement to investigate the death of a dependent child in base housing. Although APD and AFOSI coordinated on their investigations and assisted each other with access to evidence, neither party relinquished control over its own investigation.

While still on the scene, APD and AFOSI learned that the appellant was living at Mrs. Klapheke's residence and had been doing so for approximately one month. The appellant had previously moved out of his own apartment in anticipation of a deployment. After pre-deployment training at another installation, but prior to leaving on the deployment, his orders were cancelled. When he returned to Dyess AFB, he planned on living out of his car in order to save money. Shortly after his return, Mrs. Klapheke, with the knowledge of her deployed husband, offered to let the appellant stay with her. On several occasions while living at the residence, including the weekend prior to the child's death, the appellant was the sole adult in the home for a significant period of time. At some point during his stay at the residence, the appellant moved into the master bedroom with Mrs. Klapheke and the two began a sexual relationship.

When it became apparent to investigators that the appellant was living in the residence, APD sought to question him. Members of the squadron escorted the appellant to the AFOSI detachment where an APD officer interviewed him. AFOSI observed and recorded the interview but did not participate. After the initial questioning at the AFOSI building, APD transferred the appellant to the APD police station. The appellant's statements about the children's care were so inconsistent with what officers observed at the scene that APD believed that a complete interview would require closer coordination between officers interviewing the appellant and Mrs. Klapheke. That interview was also recorded.

Separate from the police interviews, the appellant also met with child welfare caseworkers from Abilene and Dyess AFB. During these interviews, which were not recorded, the appellant made further admissions about his role with the children. Both case workers testified at trial concerning the appellant's statements.

Mrs. Klapheke did not testify at the appellant's trial. At the time, she was still facing prosecution by civil authorities and the convening authority declined to grant her testimonial immunity.[2]

The appellant was charged with, and convicted of, three specifications of child endangerment, one for each child. Each specification alleged he had a duty for that child's care and had endangered the child's physical health, safety, and welfare by failing to provide food, fluids, diaper changes, and a sanitary living environment between 21 July 2012 and 28 August 2012, and that this failure constituted culpable negligence.[3] He was also convicted of adultery with Mrs. Klapheke during that same time frame.

*Corroboration of Admissions*

We review a military judge's admission of evidence for an abuse of discretion. *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion." *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000). "[O]n a mixed question of law and fact . . . a military judge abuses his discretion if his findings of fact are clearly

---

[2] In February 2014, Tiffany Klapheke was convicted in Texas state court of felony injury to a child by omission and was sentenced to 30 years in prison.

[3] The military judge found the appellant not guilty of three specifications of dereliction of duty for negligently failing to report the maltreatment of the three children. The government contended the appellant had a duty, as both a military member and security forces member, to report Mrs. Klapheke's mistreatment of her children. These specifications covered the same time period as the child endangerment specifications. Based on discussions between the parties and the military judge at trial, the military judge may have found the appellant not guilty of the dereliction specifications because he found the appellant's duty to report arose at the same time he was already engaged in the misconduct listed in the child endangerment specifications. *See United States v. Heyward*, 22 M.J. 35, 37 (C.M.A. 1987) (finding the privilege against compelled self-incrimination can excuse a military member's failure to comply with his duty to report misconduct if he was already an accessory or principal to the illegal activity he fails to report).

erroneous or his conclusions of law are incorrect." *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995).

Mil. R. Evid. 304(c)(1)–(2) reads, in pertinent part:

> An admission or a confession[4] of the accused may be considered as evidence against the accused . . . only if independent evidence . . . has been admitted into evidence that corroborates the essential facts admitted to justify sufficiently an inference of their truth. . . . If the independent evidence raises an inference of the truth of some but not all of the essential facts admitted, then the confession or admission may be considered as evidence against the accused only with respect to those essential facts stated in the confession or admission that are corroborated by the independent evidence.

The defense theory at trial was that the appellant did not have a duty to care for Mrs. Klapheke's children and that, even if he did, he was not culpably negligent because she effectively hid the children's condition from him during the month he lived with her and the children. The government argued the appellant had an *in loco parentis* duty based on his voluntary agreement with Mrs. Klapheke to assist in caring for and supervising the children, his affirmative acts of doing so on multiple occasions, and his establishment of a common household with her. The defense moved to suppress the appellant's statements to investigators for lack of corroboration, arguing the government's only evidence for these duty-creating acts were either from the appellant's own statements or from Mrs. Klapheke (who was not available to testify).

In issuing his ruling, the military judge identified only two "essential facts" in the appellant's admissions that required corroboration: (1) the appellant engaged in a relationship with Tiffany Klapheke which included living together at her residence, and (2) the accused engaged in sexual relations with her. The military judge expressly rejected the defense's contention that "each statement of the accused which the government hopes to use in support of establishing some type of duty must be independently corroborated." Instead, the military judge found the government was only required to provide sufficient corroboration to establish the trustworthiness of the appellant's statements to investigators and child welfare personnel. Based upon the military judge's finding that those two essential facts were adequately corroborated to establish the trustworthiness of the entirety of the appellant's statements, he admitted the recorded interviews of the appellant by APD, the appellant's written statement to APD, and testimony by the two social workers about incriminating statements the appellant

---

[4] As used in this rule, a "confession" is an acknowledgment of guilt while an "admission" is a self-incriminating statement falling short of an acknowledgment of guilt, even if it was intended by its maker to be exculpatory. Mil. R. Evid. 304(a)(1)(B) and (C).

made to them.[5]  In doing so, he acknowledged the government was going to draw inferences from those two essential facts to support its claim that the appellant had a duty of care towards the children.

While the military judge's conclusions of law may have been a reasonable interpretation of pre-*Adams* case law, that approach does not reflect the proper application of Mil. R. Evid. 304(c) today.  *See United States v. Mullins*, 69 M.J. 113, 116 (C.A.A.F. 2010) (holding that courts on direct review apply the law at the time of the appeal, not the time of trial).  In *United States v. Adams*, our superior court explained that courts must apply the corroboration requirement to *each* essential fact contained in the admission that the government wants to admit into evidence.  74 M.J. at 140–41.

> There is no "tipping point" of corroboration which would allow admission of the entire confession if a certain percentage of essential facts are found to be corroborated.  For instance, if four of five essential facts were corroborated, the entire confession is not admissible. Only the four corroborated facts are admissible and the military judge is required to excise the uncorroborated essential fact.  [Mil. R. Evid.] 304(c).  This analysis is completed by the military judge examining the potential corroboration for each essential fact the government wishes to admit.

*Id.*

On appeal, the government argues that the two essential facts analyzed by the military judge (that the appellant was engaged in a relationship with the children's mother which included living together and engaging in sexual conduct) are sufficient to establish the appellant's duty towards those children and to corroborate the entire statements.  We disagree.  Here, the statements of the appellant that were admitted into evidence contained factual assertions that went well beyond the two "essential facts" identified by the military judge and reasonable inferences from them, and these factual assertions were used by the government as tending to establish a duty of care towards the children that was not corroborated by evidence other than the appellant's own admissions.  For example, the government used the appellant's statements to establish he had an agreement with Mrs. Klapheke to assist in caring for and supervising the children

---

[5] Applying that standard, the military judge found the essential fact that appellant engaged in sexual intercourse with Mrs. Klapheke adequately corroborated by the pregnancy test discovered in the residence along with a receipt showing the kit was recently purchased.  He found the facts contained in statements concerning the appellant's living arrangement with Mrs. Klapheke adequately corroborated by the presence of the appellant's medical clearance form and identification tags in the bedroom and his arrival at the home following the end of his shift on 28 August 2012.  He also found the appellant's statements to civilian and military child welfare personnel could be independently admissible under Mil. R. Evid. 801(d)(2) (admission by party-opponent) and then could be used to corroborate his statements to APD.

in exchange for not paying rent and to establish that he took certain affirmative acts in caring for the children on several occasions, including caring for them when their mother was out and feeding them. These facts were essential to the government's successful claim that the appellant had a duty of care towards the children and had failed to uphold that duty, but the military judge did not examine "the potential corroboration for each [of these] essential fact[s]." *Adams*, 74 M.J. at 141. The admission of the complete interview videos, the unredacted statement, and that portion of the social workers' testimony that contained uncorroborated but essential factual assertions was an abuse of discretion in that the military judge's conclusions of law were inconsistent with the court's holding and application of Mil. R. Evid. 304 in *Adams*, which held such uncorroborated facts must be excised from the statements. *Id.*

We assess de novo whether the erroneous admission of the uncorroborated statements was harmless. *United States v. Norman*, 74 M.J. 144, 150 (C.A.A.F. 2015). "For nonconstitutional errors, the Government must demonstrate that the error did not have a substantial influence on the findings." *Id.* (quoting *United States v. Hall*, 66 M.J. 53, 54 (C.A.A.F. 2008)) (internal quotation marks omitted). We determine whether prejudice resulted from an erroneous evidentiary ruling by weighing the following factors: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* (quoting *United States v. Hall*, 66 M.J. 53, 54 (C.A.A.F. 2008)) (internal quotation marks omitted).

In this case, the balance of factors indicates that the admission was prejudicial relative to the child endangerment specifications.[6] Other than his statements, the government presented no other evidence that established a duty of care on the part of the appellant towards Mrs. Klapheke's children. The duty of care in a case of child endangerment "is determined by the totality of the circumstances and may be established by statute, regulation, legal parent-child relationship, mutual agreement, or assumption of control or custody by affirmative act." *Manual for Courts-Martial, United States*, Part IV, ¶ 68a.c.(7) (2012 ed.). Standing alone, sharing a residence with a child and engaging in a sexual relationship with that child's parent (the only essential facts the military judge found corroborated) does not tend to show a mutual agreement relating to the care of the child, or assumption of control or custody of that child. Furthermore, the defense elicited some testimony that suggested that Mrs. Klapheke affirmatively concealed the neglect of the children from the appellant and others. Within the context of the entire record, the evidence improperly admitted was material to the government's case, as it went directly to an element of the offense. Finally, the evidence was qualitatively significant. The interview videos alone showed the appellant admitting that at times he was the only adult in the house, with a clear implication that he was responsible for the children at those

---

[6] We find no abuse of discretion in the military judge's finding that the appellant's admissions to engaging in sexual relations with Mrs. Klapheke were adequately corroborated. Accordingly, the admission of the uncorroborated portion of the statements was harmless as to that offense.

times, even though the scope of such responsibility was disputed. In applying the factors set out in *Norman* and *Hall*, we conclude admission of the uncorroborated aspects of the appellant's statements was not harmless error.

*Conclusion*

The appellant's conviction of Charge II, Specification 4, alleging adultery in violation of Article 134, UCMJ, is affirmed. The appellant's conviction of Charge II, Specifications 1 through 3, and the sentence, are set aside.

The record is returned to The Judge Advocate General for remand to the convening authority who may order a rehearing on Charge II, Specifications 1 through 3, and the sentence or take other discretionary action under R.C.M. 1107(e)(1)(B). Upon completion of the convening authority's subsequent action, the case shall be returned to this court for further review. *United States v. Johnson*, 45 M.J. 88, 89–90 (C.A.A.F. 1996).

Concurring Opinion by C.J. Allred

I do not like the decision we reach today. I agree with Chief Judge Baker's dissenting opinion in *Adams*—the pendulum has swung too far. The interests of justice were better served by our superior court's "purpose-based" readings of Mil. R. Evid. 304(c), than by the literal requirement—now imposed by *Adams*—that "every essential fact identified in a confession must be individually corroborated on a one-for-one basis." 74 M.J. at 141.

I acknowledge, nevertheless, that the ruling of the 3-2 majority in *Adams* is the law we must follow—and compels the decision which I now join.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court