# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39136**

———————————

**UNITED STATES**
*Appellee*

v.

**Bradley D. HINTZ**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 13 April 2018

———————————

*Military Judge:* Matthew S. Ward (arraignment); Patricia A. Gruen.

*Approved sentence:* Dishonorable discharge, confinement for 5 years, and reduction to E-1. Sentence adjudged 20 May 2016 by GCM convened at Robins Air Force Base, Georgia.

*For Appellant:* Major Patricia Encarnación Miranda, USAF; Major Annie W. Morgan, USAF; Tami L. Mitchell, Esquire; David P. Sheldon, Esquire.

*For Appellee:* Major Amanda L.K. Linares, USAF; Major J. Ronald Steelman III, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire; Mary Ellen Payne, Esquire.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges*.

Judge MINK delivered the opinion of the court, in which Senior Judge JOHNSON and Judge DENNIS joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

MINK, Judge:

A general court-martial comprised of officer members convicted Appellant, contrary to his pleas, of one specification of attempted sexual assault on a child and two specifications of attempted commission of a lewd act upon a child, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880. The adjudged sentence consisted of a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to E-1. All of the adjudged and mandatory forfeitures were deferred until action. The convening authority ultimately waived the mandatory forfeitures for a period of six months for the benefit of Appellant's spouse and dependent child, and approved only that portion of the sentence that included a dishonorable discharge, confinement for five years, and reduction to E-1.

On appeal, Appellant raises four assignments of error: (1) whether the military judge abused her discretion when, over defense objection, she permitted a lay witness to testify to the ultimate issue of Appellant's guilt; (2) whether Appellant's sentence is unduly severe; (3) whether the evidence is legally and factually sufficient to support the findings of guilty;[1] and (4) whether Appellant is entitled to relief under *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006).[2]

---

[1] This third assignment of error was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] On 1 November 2017, 89 days after the Government responded to Appellant's assignments of error, Appellant sought to raise additional assignments of error before this court. Appellant's request was denied based on the absence of good cause for the untimely filing. On 1 March 2018, Appellant sought again to raise additional assignments of error, including those he had previously raised. Appellant's request was denied as untimely except as to whether Appellant is entitled to relief under *Moreno*. In his supplemental briefs, Appellant identified a total of six additional issues that we did not accept for review by this court:

> (1) DID THE MILITARY JUDGE ABUSE HER DISCRETION WHEN, OVER DEFENSE OBJECTION, SHE ALLOWED SPECIAL AGENT (SA) AR TO TESTIFY ABOUT "OTHER COMMON" INTERNET CRIMES AGAINST CHILDREN?

> (2) DID SA AR'S TESTIMONY CONSTITUTE UNQUALIFIED, UNRELIABLE "EXPERT" TESTIMONY PURSUANT TO MILITARY RULE OF EVIDENCE 702, AND THUS SHOULD HAVE BEEN EXCLUDED?

(*Footnote continues on next page*)

Finding no error that materially prejudices Appellant's substantial rights, we affirm the findings and sentence.

## I. BACKGROUND

On 28 October 2015, Appellant discovered a personal advertisement on Craigslist[3] entitled "Y am I so bored – w4m[4] (Warner Robins)." (Footnote inserted). The ad read:

> Y does base have to b so boring. Looking 4 some1 to hang wit after school…dnt be creepy or a jerk…military a plus, if u cnt get on base dnt bother cuz I dnt have a car to get off…

Appellant responded to the advertisement and began a conversation with an individual who identified herself as a 13-year-old dependent child named "Lisa." Unbeknownst to Appellant, "Lisa" was in fact an agent with the Air Force Office of Special Investigations (AFOSI), who was pretending to be "Lisa" as part of an undercover law enforcement operation designed to catch sexual predators targeting children. After approximately one hour of online conversation, Appellant brought up the topic of sex and asked "Lisa" if she had "[e]ver

---

(3) DID TRIAL COUNSEL ENGAGED [sic] IN PROSECUTORIAL MISCONDUCT DURING THEIR FINDINGS CASE AND ARGUMENT?

(4) DID THE CUMULATIVE EFFECT OF THE ERRORS SUBSTANTIALLY IMPAIRED [sic] THE FAIRNESS OF APPELLANT'S TRIAL?

(5) DID THIS COURT DENY APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL WHEN IT DENIED APPELLANT'S NOVEMBER 2017 SUPPLEMENTAL FILING?

(6) WHETHER TRIAL DEFENSE COUNSEL WERE INEFFECTIVE FOR FAILING TO CALL APPELLANT'S BROTHER, MR. AH, AS A WITNESS TO TESTIFY IN PERSON ON THE MERITS AND SENTENCING?

The sixth additional issue was raised pursuant to *Grostefon*, 12 M.J. 431 (C.M.A. 1982), and although we did not accept Appellant's submission of these alleged errors or his supplemental briefs addressing each, we carefully considered each issue in the course of our review pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c), and found no error that materially prejudiced Appellant's substantial rights.

[3] Craigslist is a website that hosts classified advertisements and discussion forums.

[4] The acronym "w4m" stands for "women for men."

had sex?" The two exchanged a few more messages and then ceased communication the following day after "Lisa" did not respond to two messages sent by Appellant.

On 16 November 2015, Appellant responded to another personal advertisement on Craigslist and almost immediately recognized that he was communicating with the same "Lisa" from a few weeks prior. The AFOSI special agent pretending to be "Lisa" again told Appellant that she was 13 years old. At Appellant's request, he and "Lisa" switched to Yahoo! Messenger and their email and text discussions continued for eight days. During this period, Appellant repeatedly asked "Lisa" to send him photographs of herself and requested to meet her in person. Appellant's electronic communications included a variety of sexual terms and language to describe—in graphic detail—the sexual acts that he wanted to perform on "Lisa" and that he wanted her to perform on him, as well as his desire to see her have an orgasm. Since "Lisa" told him she was a virgin, Appellant sought to inform her—again in graphic detail—how she should masturbate to prepare for their planned sexual encounter.

Around mid-day on 24 November 2015, when "Lisa's" parents would not be at home, Appellant and "Lisa" planned to rendezvous at a house, purported to be "Lisa's," on Robins Air Force Base (AFB) so they could have sex. As he approached the back door of the home, Appellant was apprehended by AFOSI agents, at which time Appellant stated, "I f**ked up."

## II. DISCUSSION

### A. Lay Witness Testimony

AFOSI Special Agent (SA) AR was the primary individual who pretended to be "Lisa" and communicated with Appellant. SA AR testified as to how the AFOSI operation was conducted, about his email and text communications with Appellant, and about the apprehension of Appellant. Appellant asserts that the military judge abused her discretion by permitting SA AR to testify as to how others responded to "Lisa" online, that Appellant was a predator, that Appellant intended to have sex with a 13-year-old child, and that Appellant was not "innocent." We agree the military judge abused her discretion in allowing these portions of SA AR's testimony, but we find that the admission of these portions of testimony was harmless error.

#### 1. Law

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The

challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

Military Rule of Evidence 401 establishes the standard for determining whether evidence is relevant and states: "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Military Rule of Evidence 402 generally provides that "relevant evidence" is admissible unless one of four exceptions enumerated in the Rule applies. Military Rule of Evidence 403 states that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence."

"When a military judge conducts a proper balancing test under Mil. R. Evid. 403, the ruling will not be overturned unless there is a clear abuse of discretion." *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (internal quotation marks and citation omitted). A reviewing court "gives military judges less deference if they fail to articulate their balancing test on the record, and no deference if they fail to conduct" any balancing test at all under Mil R. Evid. 403. *Id.*

Military Rule of Evidence 701 specifies that lay witness opinion testimony must be: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Mil. R. Evid. 702," which discusses expert witness testimony. "When 'facially coherent communications' are at issue, no lay interpretation will be helpful or admissible, unless the proponent 'establish[es] a foundation that call[s] into question the apparent coherence of the conversation so that it no longer seem[s] clear, coherent, or legitimate.'" *United States v. Lopez,* 76 M.J. 151, 156 (C.A.A.F. 2017) (alteration in original) (quoting *United States v. Byrd*, 60 M.J. 4, 7 (C.A.A.F. 2004)).

**2. Analysis**

During the trial counsel's direct examination of SA AR, the following exchange occurred between the trial counsel, the senior defense counsel, and the military judge, leading to this portion of SA AR's testimony:

> TC [Trial Counsel]: What are the responses typically like when Lisa says that she is 13?

SDC [Senior Defense Counsel]: Objection, Your Honor. Relevance and this is impermissible to relate this to anything about [Appellant's] case.

TC: Your Honor, the agent is just talking generally about the operation before we move into this particular investigation.

SDC: Your Honor, it relates to trying to get the members to compare [Appellant] to other people which is impermissible and irrelevant. It's just to prejudice his character compared to other people. It doesn't matter to this case or to the members what other people did.

MJ [Military Judge]: I think it goes to foundation, so I'm going to overrule your objection. You can continue.

TC: [SA AR], I'll repeat the question. What's the typical response when Lisa says she's 13?

WIT [Witness]: Generally, as I stated, we get, on average, 30 responses per advertisement. The general responses vary from we just don't get a reply – once the age is introduced the person just stops talking to us altogether – many other people just berate us for being online and inform us that the internet is a dangerous place, we shouldn't be here, and they hope that we don't get hurt – and other individuals outright, after berating us, inform us that they are going to flag our post for removal to try and to protect us and tell us that we shouldn't be online.

As he did at trial, Appellant asserts on appeal that SA AR's testimony as to how others responded to "Lisa" once she disclosed she was 13 years old was prejudicial to Appellant and not otherwise relevant. In overruling the objection by trial defense counsel to this testimony, the military judge summarily stated that she believed the information went to "foundation." The military judge did not explain her analysis or conduct a Mil. R. Evid. 403 balancing test. Consequently, we are unable to surmise to what "foundation" the military judge was referring. Any relevance this information might have had to a fact in issue is suspect at best, and its potential prejudice by allowing a comparison of Appellant's actions to the actions of others is also apparent. As noted above, in the absence of a Mil. R. Evid. 403 balancing test, we give the military judge's ruling no deference and we decide the issue de novo. *See Manns*, 54 M.J. at 166. We find that if this evidence was at all relevant, any probative value was substantially outweighed by the danger of unfair prejudice. Thus, in allowing this testimony, the military judge abused her discretion.

Later, during the trial counsel's re-direct examination of SA AR, the following exchange occurred:

TC: Again, based on your training in identifying child predators, what are the things that [Appellant] said that let you know he believed Lisa to be 13?

SDC: Objection, Your Honor. Impermissible.

MJ: Impermissible on what basis?

SDC: Speculating about [Appellant's] state of mind. He's not a lie detector or –

MJ: I understand. Re-ask your question.

TC: Based on your training and how you are taught to identify child predators, what were the things [Appellant] said that alerted you to know that he in fact was looking for sex with Lisa?

MJ: Okay. Your objection is overruled.

WIT: Okay, ma'am. I'm sorry. Can you just one more time?

TC: So based on the training that you went to that was designed to alert you to child predators, what were the things that [Appellant] was saying to you that let your [sic] know in fact this was someone looking for sex online?

SDC: Your Honor, I object again based on the characterization of child predators. They are trying to identify [Appellant] as a child predator.

MJ: That's the theme of their case, so on that basis it's overruled.

WIT: So generally, whenever we have interactions with individuals online, like I stated before, we allow them to steer the conversation, so however they naturally want to take the conversation is what we allow, and then we are receptive to whichever direction they want to go.

Generally, as I stated before, most individuals would immediately decline conversing with a 13-year-old child. However, in this case with [Appellant], he continued to have a conversation with a 13-year-old child. Further, he took that opportunity to bring up the topic of sex with a 13-year-old child. That's pretty indicative of an individual that would like to have sex with a 13-year-old child.

7

Further, he introduced the idea of the two having sex together and inquired about her sexual experiences and described different methods of sexual acts he want to perform onto her and have her perform onto him and the two do together. So, based on those, that would identify to me that he is different than an otherwise innocent person that would not communicate with a 13-year-old individual, and that would not pursue a sexual relationship with a 13-year-old, and would not attempt to have sex with a 13-year-old versus the case here where he did.

We agree with Appellant that SA AR's testimony as to how others responded to "Lisa" online, suggesting Appellant was a predator, that Appellant intended to have sex with a 13-year-old child, and particularly that Appellant was not "innocent," was erroneously admitted by the military judge.

Both Appellant and the Government agree that SA AR was not qualified or offered as an expert witness during Appellant's trial. Thus, SA AR could only testify as a lay witness and any opinion testimony SA AR could offer the court was limited under the provisions of Mil. R. Evid. 701. See *United States v. Norman*, 74 M.J. 144, 148–49 (C.A.A.F. 2015). However, the testimony sought from SA AR was premised on SA AR's "training in identifying child predators." The trial defense counsel's objection to the use of the term "child predator" because it characterized Appellant as such, was essentially an objection on the grounds of relevance and unfair prejudice. The military judge overruled the objection based on the fact that *the theme of the Government's case* was that Appellant was a child predator, but with no further explanation and without conducting a balancing test under Mil. R. Evid. 403. Whether Appellant was a child predator was not relevant to establish Appellant's guilt to the charged offenses and allowing the Government to characterize Appellant in such a way could be unfairly prejudicial in the findings portion of the trial. After the military judge overruled the objection, SA AR was permitted—in the guise of a lay opinion based on his "training"—to testify as to how Appellant behaved like a child predator, that Appellant had the intent to have sex with a 13-year-old child, and that Appellant did not act like an "innocent" person would under the circumstances, in addition to again stating how Appellant's actions differed from others who responded to the advertisement.

Interestingly, appellate government counsel argues in their brief that "[c]ommon sense and knowledge of the ways of the world would lead a reasonable person to conclude that when a grown man, when chatting with what he believes to be a 13 year old girl, brings up the topic of sex, introduces the idea of the two having sex together, inquires about past sexual experiences, and describes different methods of sexual acts that he wants to perform on her and vice versa, he is looking for sex with his chat partner." Yet, the trial counsel

sought to have SA AR testify on this very issue, giving the imprimatur that a trained law enforcement officer concluded the same thing. Such testimony by a lay witness regarding these "facially coherent communications" was improper. There was no suggestion by the Government that the communications between Appellant and SA AR regarding Appellant's sexual interest were not clear or coherent.[5] The trial counsel simply sought to have SA AR interpret what Appellant was stating in his electronic communications with SA AR. This was improper and the military judge abused her discretion by allowing such testimony.

In addition, SA AR's testimony that Appellant was "different than an otherwise innocent person" went directly to the issue of whether Appellant was guilty, invaded the province of the jury, and thus was clearly improper. The fact that trial defense counsel neither objected again during or after SA AR's testimony, nor the fact that the trial defense counsel requested no instruction from the military judge to address the error did not relieve the military judge of her responsibility to *sua sponte* address such obviously improper evidence—particularly when the testimony was given in response to a question that had been the subject of an objection from the trial defense counsel.

Having found that the military judge abused her discretion in admitting the above portions of SA AR's testimony, we now consider whether such error was prejudicial to Appellant.

Whether an error was harmless is reviewed de novo. *United States v. Norman*, 74 M.J. 144, 150 (C.A.A.F. 2015) (citing *United States v. Hall*, 66 M.J. 53, 54 (C.A.A.F. 2008)). "For nonconstitutional errors, the Government must demonstrate that the error did not have a substantial influence on the findings." *Id.* (quoting *Hall*, 66 M.J. at 54). We determine whether prejudice resulted from an erroneous evidentiary ruling by weighing: (1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of evidence in question; and (4) the quality of the evidence in question. *Id.*

In applying the first of the four factors, we note that without the erroneously admitted testimony from SA AR, the Government's case against Appellant was very strong. During Appellant's trial, SA AR testified about his conversations with Appellant by email and text while SA AR was posing as a 13-year-old child. SA AR also testified about apprehending Appellant as he approached the back door of the on-base residence where Appellant had arranged to meet "Lisa" when Appellant believed her parents were not at home. A video-

---

[5] By comparison, SA AR did provide helpful testimony by explaining certain acronyms used during the online chats, such as that "HMU" means "hit me up" to request a later contact or communication.

recording of Appellant's apprehension by AFOSI agents was also introduced into evidence. SA AR testified that after being apprehended, Appellant stated something to the effect of, "I f**ked up." The documentary evidence included screen captures of two Craigslist posts and dozens of pages of email communication transcripts between Appellant and SA AR, including sexually graphic language by Appellant stating his sexual intentions and desires regarding "Lisa." An expert computer forensics examiner employed by the Department of Defense Computer Forensics Lab (DCFL) testified regarding the review he conducted of Appellant's cellular phone and the electronic communications he located on the phone between Appellant and SA AR. The DCFL examiner also testified regarding his report, which included information he discovered on Appellant's phone indicating that Appellant used Google Maps[6] to locate the address where Appellant attempted to meet "Lisa" and was subsequently apprehended.

Looking at the second factor, we determined the defense case focused primarily on whether Appellant actually believed "Lisa" was a 13-year-old girl, a comparatively weak case in light of the extensive transcripts and Appellant's "I f**ked up" comment made during his apprehension.

In applying the third factor, we find that the objectionable portion of SA AR's testimony was not material to the Government's overall case in establishing Appellant's guilt of the charged offenses. Despite SA AR's status as a trained investigator, the nature and extent of the admissible evidence available for consideration by the court-members, including the transcript of Appellant's communications with "Lisa," eliminated any materiality that the objectionable portion of SA AR's testimony may have had.

Lastly, while the quality of SA AR's testimony was significant in view of the fact that he was the Government's primary witness, the objectionable portion of his testimony was neither relied upon nor quoted by trial counsel during findings argument, except for a brief comparison of Appellant's response to being told "Lisa" was 13 years old with the responses of others. Instead, trial counsel's argument focused on Appellant's specific communications and actions in this case. We conclude that the first three factors weigh significantly in favor of the Government and outweigh the fourth factor. Accordingly, we find that the admission of the objectionable portions of SA AR's testimony by the military judge was harmless error.

---

[6] Google Maps is an Internet web-mapping service.

**B. Sentence Appropriateness**

Appellant claims that his sentence to five years of confinement is unduly severe when compared to sentences in other cases he describes as having "nearly identical fact patterns" to his case. We are not persuaded.

**1. Law**

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). "Congress has vested responsibility for determining sentence appropriateness in the Courts of Criminal Appeals." *United States v. Wacha*, 55 M.J. 266, 268 (C.A.A.F. 2001). This power "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *Id.* (quoting *United States v Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001)).

Accordingly, we may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (alteration in the original) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

When arguing sentence disparity and asking us to compare his sentence with the sentences of others, Appellant bears the burden of demonstrating those other cases are "closely related" to his, and if so, that the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). The United States Court of Appeals for the Armed Forces has indicated cases are "closely related" if there is a "direct nexus between servicemembers whose sentences are sought to be compared," for example, involvement in a common crime or parallel schemes. *Id.* If an appellant carries that burden, then the Government must show a rational basis for the sentence differences. *Id.*

**2. Analysis**

Appellant fails to demonstrate how the cases mentioned in his brief are "closely related" to his case. While the fact patterns may be similar, Appellant was not a "co-actor involved in a common crime, involved with other servicemembers in a common or parallel scheme," nor did there exist a "direct nexus" between Appellant or any other servicemember whose sentence Appellant is inviting us to compare to his own. *Id.* Thus, we decline to compare Appellant's

sentence with other such cases. Although the cases cited by Appellant are not "closely related" to Appellant's, we recognize that we may compare these cases to consider the propriety of Appellant's sentence, although we are not required to do so. *See Wacha*, 55 M.J. at 267; *see also Lacey*, 50 M.J. at 288. However, unless the cases are closely related, "[t]he appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases." *United States v. LeBlanc,* 74 M.J. 650, 659 (A.F. Ct. Crim. App. 2015) (en banc) (citing *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)).

For purposes of sentencing, the military judge merged the two specifications of attempted commission of a lewd act upon a child. Based on the offenses of which he was convicted, Appellant still faced the possibility of confinement for 35 years. The court members, having found Appellant guilty of the offenses and having reviewed all of the evidence, determined a sentence including five years of confinement was appropriate. Appellant's offenses are serious and his sentence, which included confinement of 30 years less than the maximum authorized, is correct in law and fact. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we conclude that the sentence is not inappropriately severe.

## C. Legal and Factual Sufficiency

Appellant asserts that his convictions are legally and factually insufficient. We disagree.

### 1. Law

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted). The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *Turner*, 25 M.J. at 324)). The term "beyond a reasonable doubt" does not mean that the evidence must be "free from conflict." *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

**2. Analysis**

The evidence introduced by the Government at trial to establish Appellant's guilt of the charged offenses is discussed more fully above. Viewing that evidence, including the testimony of SA AR (exclusive of the objectionable portions of his testimony) and the DCFL examiner, the transcript of email communications between Appellant and the person he had been told was a 13-year-old child, the DCFL report containing text messages between Appellant and "Lisa," the Google Maps location of "Lisa's" purported residence, and the statement of Appellant demonstrating consciousness of guilt when he was apprehended, in the light most favorable to the Government, we find that the court members could have found Appellant guilty of all of the essential elements of the charged offenses beyond a reasonable doubt. Moreover, we are convinced beyond a reasonable doubt that Appellant attempted to sexually assault a child and attempted to commit lewd acts upon a child. Thus, we conclude Appellant's convictions are legally and factually sufficient.

**D. Delayed Appellate Review**

Appellant's case was docketed with this court on 7 September 2016, more than 18 months before a decision was rendered. In *Moreno*, our superior court established a presumption of facially unreasonable delay when a service Court of Criminal Appeals does not take action within 18 months of docketing. 63 M.J. 129, 142 (C.A.A.F. 2006).

Because there is a facially unreasonable delay in Appellant's case, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citations omitted). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

*Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–41 (citations omitted). Where, as here, an appellant does not prevail on the substantive grounds of his appeal, there is no oppressive incarceration. *Id.* at 139 (citing *Cody v. Henderson*, 936 F.2d 715, 720 (2d Cir. 1991)). Similarly, where Appellant's substantive appeal fails, his ability to present a defense at a rehearing is not impaired. *Id.* at 140–41. Furthermore, we do not find any "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by [appellants] awaiting an appellate decision." *Id.* at 140. Accordingly, Appellant has not demonstrated prejudice. In addition, the delay exceeded the *Moreno* standard by slightly more than one month, and we do not find the delay so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. Accordingly, we do not find a violation of Appellant's due process right to timely post-trial processing and appeal.

Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), [7] we conclude it is not.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

---

[7] These factors include: (1) how long the delay exceeded the standards set forth in *Moreno*; (2) what reasons, if any, the Government set forth for the delay, and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) whether there is evidence of harm to the appellant or institutionally caused by the delay; (4) whether the delay has lessened the disciplinary effect of any particular aspect of the sentence, and whether relief is consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing; and (6) given the passage of time, whether this court can provide meaningful relief in this particular situation.

Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court