# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 DANIEL I. AVILA**
**United States Army, Appellant**

ARMY 20160200

Headquarters, 1st Cavalry Division (Rear) (Provisional)
Wade N. Faulkner and Douglas K. Watkins, Military Judges
Lieutenant Colonel Michael D. Jones, Acting Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Jack D. Einhorn, JA; Major Bryan A. Osterhage, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Virginia Tinsley, JA (on brief).

4 September 2019

------------------------------------------------
MEMORANDUM OPINION ON REMAND
------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

In light of our Superior Court's holding in *United States v. Kohlbek,* 78 M.J. 326 (C.A.A.F. 2019), we find the military judge did not err by prohibiting appellant from presenting evidence that implicated either the result or the reliability of his polygraph examination, and, even if the military judge erred, appellant was not prejudiced.

Our court previously conducted an appellate review of this case pursuant to Article 66, Uniform Code of Military Justice [UCMJ], affirming appellant's conviction and sentence. *United States v. Avila,* 2018 CCA LEXIS 513 (Army Ct.

Crim. App. 23 Oct. 2018) (mem. op.).[1] After our review, the Court of Appeals for the Armed Forces (CAAF) issued its decision in *United States v. Kohlbek*, 78 M.J. 326 (C.A.A.F. 2019). Based on that decision, the CAAF remanded appellant's case to this court to review whether, "[i]n light of *United States v. Kohlbek*, . . . the military judge erred by prohibiting the admission of any polygraph evidence thereby preventing appellant from fully explaining a false confession and from impeaching the polygraph examiner who subsequently testified on the merits."[2] *United States v. Avila*, 2019 CAAF LEXIS 323 (C.A.A.F. 1 May 2019) (order).

## BACKGROUND

### A. Events Leading to the Charges

Appellant met two seventeen year-old girls, MB and MN, at a park near Fort Hood, Texas, around 2100 hours in September 2014. They initially planned to go to the movies, but MN wanted to "party" instead. They then went to appellant's house on Fort Hood. Appellant text messaged his friend, Private (PVT) Deason, to join them, stating he had girls with him, and "Don't ask age." Appellant followed up with another text message, "Hurry up. I'm losing them." Eventually, PVT Deason joined them. Throughout the evening MB and MN consumed wine, liquor, and beer. They all played "strip beer bong," but had to stop midway through the fourth game because MB and MN were too intoxicated to continue playing. MB and MN were stumbling and slurring their words and do not recall anything that occurred after the second game of beer pong.

MN vomited and then laid down on a futon in appellant's living room, while MB laid down in the bedroom. Appellant laid on the futon with MN and told PVT Deason, "She's ready for you," referring to MB in the bedroom. Private Deason had sex with MB in the bedroom and filmed it on his cell phone. Meanwhile, appellant had sex with MN on the futon. After PVT Deason had sex with MB, appellant

---

[1] An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of sexual assault and one specification of obstructing justice in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 934 (2012) (UCMJ). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

[2] Pending our review of the one remanded issue, the CAAF reversed this court's original decision as to Specifications 1 and 2 of Charge I (sexual assault) and as to the sentence, but affirmed this court's previous decision in all other respects. Based on the CAAF's affirmance of our previous decision in all other respects, this decision only addresses the one remanded issue.

entered the bedroom and also had sex with MB. Appellant exited the bedroom and told PVT Deason, "her pussy was tight."

When MB and MN did not return home, their parents contacted law enforcement and began looking for them. MN's father, a noncommissioned officer assigned to Fort Hood, found MN's car parked near appellant's house in the early morning hours. Law enforcement arrived and eventually knocked on appellant's door. MB and MN recall waking up, one naked, and the other partially naked in appellant's house, feeling nauseous and with vomit in their hair. Appellant told PVT Deason, MN, and MB, "let's just say we met at the movies. Let's go with the movie story." Appellant suggested that he and PVT Deason "make a run for it," but PVT Deason did not agree.

After locating MB and MN, law enforcement arrested appellant and PVT Deason who were transported to the hospital to get a sexual assault forensic exam (SAFE). Prior to the exam, appellant wiped his penis off with water in the bathroom and told PVT Deason to do the same. Despite his proactive measures, MN's DNA was found on appellant's penis. For several months, law enforcement only suspected appellant of committing a sexual offense against MN.

### B. Appellant's Polygraph Examination

On 13 January 2015, approximately four months after the incident, appellant consented to a polygraph examination regarding his alleged sexual assault of MN.[3] After the polygraph examination, appellant signed a written sworn statement admitting to a sexual offense against not only MN, but also against MB.[4]

Appellant admitted to playing beer pong with MN and MB until MN vomited from drinking too much alcohol. Appellant admitted that after he helped MN to the bathroom to vomit, he had sex with her on the futon. Appellant further admitted that he saw PVT Deason leave the bedroom after having sex with MB, and that appellant then entered the bedroom and had sex with MB while she was mostly asleep. When

---

[3] Prior to his polygraph examination, appellant made a statement to CID on the day he was arrested; however, the military judge suppressed this statement at trial. The government appealed the military judge's ruling to this court pursuant to Article 62, UCMJ. This court denied the government's appeal. *United States v. Avila*, ARMY MISC 20150590 (Army Ct. Crim. App. 4 Nov. 2015) (order).

[4] Throughout appellant's post-polygraph statement, he referred to MB as "Rachel." On 9 March 2015, appellant made another sworn statement to CID clarifying that "Rachel" is actually MB.

asked whether he thought MB was capable of consenting to sexual intercourse with him, appellant replied, "No . . . . She was too intoxicated."

### C. The Polygraph Examination Motion in Limine

Defense submitted a written motion *in limine* to present evidence that "[appellant] was told he *failed* the polygraph, and to argue that the polygraph was used as a method in the interrogation as a means to obtain a false confession."[5] (emphasis added).

Unlike most examinations, a polygraph has three possible results: pass, inconclusive, or fail. Appellant's polygraph examination was inconclusive but only one point from failing. To reiterate: he did not pass; he did not fail. This three-tiered, as opposed to two-tiered, polygraph result system led to confusion and controversy between the parties which we discuss below in our analysis.

At the motion hearing, defense specifically orally requested to present evidence that: (1) appellant was told three times by the polygraph examiner, Special Agent (SA) CH he "*did not pass*" the polygraph; and (2) to elicit testimony from SA CH on cross-examination that the result of the polygraph was inconclusive and SA CH lied to appellant about his test result. (emphasis added). Defense argued this result-based evidence was necessary to explain the reason why appellant confessed. The military judge, who presided over the motion hearing, denied the defense motion to present the results of the polygraph examination in an e-mail ruling but permitted the defense "to go into the circumstances surrounding the statements the accused made on 13 January 2015, to include the fact that SA [CH] told the accused he believed he wasn't being truthful."[6]

---

[5] Defense counsel also submitted a pre-trial motion to suppress appellant's 13 January 2015 statement under the Fifth Amendment, Mil. R. Evid. 304, 305, and Article 31(b), UCMJ. Essentially, appellant argued he did not understand the rights advisement when he waived his rights, he was susceptible to coercion, the length and details of SA CH's questioning showed his statement was involuntary, and his confession was false. The military judge denied the defense motion finding appellant "received a proper rights warning, understood his rights, and chose to waive them . . . . [N]othing in the interaction between [appellant] and [SA CH] on 13 January 2015 indicates that the statement given on that day was involuntary."

[6] The entirety of the military judge's email ruling regarding the defense motion *in limine* is provided below:

(continued . . .)

At trial, the government offered and the military judge admitted appellant's post-polygraph written sworn statement into evidence during the government's direct examination of SA CH.

## LAW AND DISCUSSION

We review a military judge's decision to exclude evidence for an abuse of discretion. *United States v. Jasper*, 72 M.J. 276, 279 (C.A.A.F. 2013). "A military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015) (internal quotation marks and citations omitted). Military Rule of Evidence 707(a) provides "[n]otwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence."

### A. United States v. Kohlbek

In *United States v. Kohlbek*, the CAAF, addressing the scope of Mil. R. Evid. 707(a), held the "prohibition on 'any reference to . . . [the] taking of a polygraph examination,' does not encompass evidence regarding *the facts and circumstances* of a polygraph procedure offered to explain the reason or motivation for a confession." *Id.* at 329. (emphasis added). The CAAF distinguished *Kohlbek* from the Supreme Court's decision in *United States v. Scheffer*, 523 U.S. 303 (1998), by noting that

(...continued)
> The defense motion to offer the results of the polygraph examination is denied. The defense is permitted to go into the circumstances surrounding the statements [appellant] made on 13 January 2015, to include the fact that SA [CH] told [appellant] he believed he wasn't being truthful. However, MRE 707 prohibits 'the result of a polygraph examination, the polygraph examiner's opinion, or any reference to an offer to take, failure to take, or taking of a polygraph examination.' To the extent that defense wishes to go into such matters, the motion is denied.

While we find the military judge did not err in this case, we pause to note our concern with issuing an email ruling containing only bare-bone findings of fact and conclusions of law.

Scheffer sought to introduce evidence of the results of his polygraph, which turned on the unreliability of a polygraph under *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993). *Kohlbek*, 78 M.J. at 332-33.

We find appellant's case distinguishable from *Kohlbek* and more akin to *Scheffer*. As we explain below, the key distinction is that appellant sought to admit evidence that implicated the result or the reliability of his polygraph examination, not just the facts and circumstances surrounding his examination.

The accused in *Kohlbek* waived his Article 31, UCMJ right to remain silent, made an initial statement to law enforcement, and agreed to submit to a polygraph examination. *Id.* at 329. The polygraph examination lasted four hours, and afterwards Kohlbek made a statement confessing to law enforcement. *Id.* At trial, Kohlbek filed a motion *in limine* seeking to admit evidence of the facts and circumstances surrounding his post-polygraph confession in order to show it was made under duress. *Id.* Specifically, Kohlbek testified at a pre-trial hearing on the motion that he was uncomfortable during the polygraph; his arm was turning purple because of the blood pressure cuff; he had extreme hip pain; he was told that he could only answer "yes" or "no" to the polygraph examiner's questions; sitting still during the polygraph was painful because of his hip issues; and the examiner threatened to hook him back up to the machine if he answered he did not recall the events in question. *Id.* The military judge prohibited Kohlbek from presenting any evidence on the facts and circumstances surrounding the taking of his polygraph examination based on Mil. R. Evid. 707(a)'s prohibition on "any reference . . . to taking of a polygraph," and the Supreme Court's decision in *Scheffer*, 523 U.S. 303 (1998). *Id.* at 330.

The CAAF found Mil. R. Evid. 707(a) is not "a blanket per se prohibition on introducing any evidence that references a polygraph examination in any way." Rather, Mil. R. Evid. 707(a) excludes "evidence referencing taking a polygraph that implicates the reliability of the results of a polygraph." *Id.* The CAAF further explained, "evidence of the facts and circumstances of a polygraph examination procedure offered to explain the reason or motivation for a confession are in no way tied to the reliability of the test itself." *Id.* at 331. Accordingly, the CAAF adopted the more narrow interpretation of Mil. R. Evid. 707(a), "which permits military judges to exercise their discretion in deciding whether to admit evidence regarding

the facts and circumstances surrounding a polygraph examination to explain the reason or motivation for a confession." *Id.* at 331-32.[7]

*B. Application of United States v. Kohlbek to Appellant's Case*

Pursuant to his ruling, the military judge allowed appellant to present the facts and circumstances surrounding his polygraph examination. During the cross-examination of SA CH, defense counsel elicited the following testimony regarding the facts and circumstances of appellant's polygraph examination: appellant was at CID for over eight hours on 13 January 2015; he slept five hours the night prior; the last time he ate was at 1900 the night prior; he only ate a bag of chips the entire day of 13 January 2015; he was prescribed Trazodone (a sleep medication); the interview was administered in a small room; he was allowed breaks; he was nineteen years-old; SA CH typed appellant's statement; and there was no video or recording of the interview.[8]

In closing argument, defense counsel highlighted the surrounding circumstances to explain the reason for appellant's confession and argued it was involuntary. As such, appellant was not denied a fair opportunity to present a defense. *See, e.g., Crane v. Kentucky*, 476 U.S. 683, 689 (1986) (holding no Sixth Amendment violation where defense was permitted to present evidence of the physical and psychological environment in which his confession was obtained to cast doubt on its credibility).

---

[7] The CAAF noted this interpretation is consistent with the Supreme Court's holding in *Scheffer*, 523 U.S. 303 (1998). *Kohlbek*, 78 M.J. at 332. The issue in *Scheffer* addressed an accused's ability to introduce the *results* of a polygraph, which showed "no deception," in order to bolster his credibility in front of the panel. (emphasis added). The Supreme Court held the polygraph results are inadmissible and that Mil. R. Evid. 707 does not unconstitutionally abridge the right of an accused to present a defense due to the legitimate interests of Mil. R. Evid. 707 in "ensuring that only reliable evidence is introduced at trial, preserving the jury's role in determining credibility, and avoiding litigation that is collateral to the primary purpose of the trial." *Id.* at 309.

[8] Appellant testified to the facts and circumstances surrounding his polygraph examination at the motion hearing but did not testify during the findings portion of the contested trial. Further, unlike Kohlbek, appellant did not claim that the physical aspects of taking the polygraph examination caused him pain or physical discomfort.

The only evidence appellant requested to present, but was denied, was that SA CH told appellant either he did not pass or allegedly failed the polygraph examination. Essentially, evidence tied directly to the *result* of his polygraph examination. This is precisely the concern of the rule, which is to prevent the unreliability of polygraph results from usurping the role of the panel members in adjudging guilt or innocence. *See Sheffer*, 523 U.S. at 309 n. 5. Thus, the military judge correctly permitted defense to present the facts and circumstances surrounding appellant's confession, including SA CH's statement that he believed appellant was being untruthful, but not the polygraph result. As CAAF stated in *Kohlbek*, interpreting Mil. R. Evid. 707 to "only cover 'references' to polygraph exams that implicate the result, or the reliability of the test, would be well within the President's authority under Article 36, UCMJ." *Kohlbek,* 78 M.J. at. 332.

### C. Limited Purpose in Offering Polygraph Results

While the CAAF appears to uphold the Mil. R. Evid. 707 prohibition on admitting any evidence that implicates the result or the reliability of the polygraph examination test, we now pause to address whether appellant possessed a limited purpose in offering the polygraph exam "where it is not offered to prove the truth of the polygraph result but is instead offered for a limited purpose." *Kohlbek*, 78 M.J. at 333 (quoting *United States v. Allard*, 464 F.3d 529, 534 (5th Cir. 2006)). As discussed below, even if appellant possessed a limited purpose for introducing the results, that evidence possessed little, if any, probative value.

If appellant's limited purpose in introducing the polygraph result was to demonstrate that his statement was a false confession induced by SA CH's statement that appellant did not pass, or allegedly failed, we note appellant's testimony regarding his motivation for providing his alleged false confession does not appear to be tied to the result of his polygraph examination. Appellant testified at the motion hearing that he falsely confessed because "[i]t was really heated in there and I didn't want to be at CID anymore. I had been there for a good while and I was really saying whatever I needed to say to get him off my back." Considered as a whole, the tenor of appellant's testimony at the motion hearing is that he confessed because he wanted to go home. Appellant never states that he confessed due to the results of the polygraph. In fact, SA CH testified that appellant confessed after he was told that evidence was collected from MN and MB and it would be tested for his DNA. Accordingly, appellant's self-described motivation in falsely confessing does not appear to be tied to the polygraph examination's result. Any presentation of that evidence is not relevant, at a minimum, and potentially unfairly prejudicial, confusing, or a waste of time.

Another possible limited purpose for appellant to introduce the polygraph result was to cross-examine SA CH; however, appellant's testimony at the motion hearing also undermines this argument. Appellant now claims SA CH lied to him by telling him he *failed* the polygraph examination and that SA CH lied during the motion hearing when he testified that he never lied to appellant during the interview. Appellant asserts the military judge erred by failing to allow his defense counsel to cross-examine SA CH on this issue. This argument implicates the confusion between the parties and the witness created by the three-tiered polygraph result system of pass, inconclusive, and fail.

Special Agent CH testified he told appellant that he did not pass the test and it was possible, but he could not recall, if he told him whether he failed. The parties and the witness consistently disregarded the inconclusive result and discussed the polygraph examination as a two-tiered system. Defense counsel even intermingled the three-tiered system into a two-tier system by requesting to present evidence that SA CH told appellant he did not pass (which was accurate), and at other times requesting to present evidence that SA CH told him that he failed. Minimal, if any, probative value existed in cross-examining SA CH on this issue, however, because appellant's testimony at the motion hearing undermines his entire argument. Appellant testified "[SA CH] [came] in and said that I was a bad liar. He didn't say that I didn't fail. He just said I didn't pass." Appellant's own testimony supports SA CH's testimony that he did not lie to appellant during the interview and that SA CH did not lie at the motion hearing. Again, the probative value of the evidence about the polygraph result possessed minimal, if any, probative value and created the potential for unfair prejudice, confusion, and a waste of time.

Further, even if failing to admit the polygraph result was error, the military judge mitigated the harm by permitting the defense counsel to question SA CH on whether he told appellant he believed appellant was being untruthful. We note defense counsel did not cross-examine SA CH on this point. Since that foundation was not laid, we question whether appellant requested to introduce the results of his polygraph for a limited purpose or instead as subterfuge to bolster his credibility in front of the panel that he did not fail the examination. As the CAAF stated in *Kohlbek*, "the prohibition on evidence of the *results* of a polygraph examination is the clear target of [Mil. R. Evid. 707(a)]." 78 M.J. at 332 (emphasis added). The prohibitions in Mil. R. Evid. 707(a) "are tied to the concern that polygraph examinations are scientifically unreliable." *Id.* (citing *Scheffer*, 523 U.S. 303, 309 n. 5 (1998)).

### D. Prejudice

Even assuming the military judge erred, we find any potential error did not prejudice appellant. The "finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." UCMJ art. 59(a). For nonconstitutional evidentiary errors, the test for prejudice "is whether the error had a substantial influence on the findings." *United States v. Fetrow*, 76 M.J. 181, 187 (C.A.A.F. 2017) (citation omitted). In conducting the prejudice analysis, we weigh: "(1) the strength of the Government's case, (2) the strength of the defense case, (3), the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Norman*, 74 M.J. 144, 150 (C.A.A.F. 2015) (quoting *United States v. Hall*, 66 M.J. 53, 54 (C.A.A.F. 2008)); *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999). Applying these factors, we conclude the failure to allow defense counsel to present evidence that appellant's polygraph was inconclusive, and that SA CH told him he did not pass or allegedly failed, did not have a substantial impact on the findings.

### 1. Strength of the Government's Case

The government presented overwhelming evidence of appellant's guilt. The evidence that appellant knew or should have known MB and MN were too intoxicated to consent to sexual intercourse is extensive. Both MB and MN testified they do not remember much after the second game of beer pong.

This was corroborated by PVT Deason's testimony regarding MB's and MN's alcohol consumption and his observations of their level of impairment. Private Deason testified they all took a two ounce shot of liquor when he first arrived at appellant's house, and they all took another two ounce shot prior to playing beer pong. After each game, they took another two ounce shot of liquor. The beer pong cups were each filled with three ounces of beer. Private Deason testified that they had to stop playing during the fourth game because MB and MN were stumbling, slurring their words, and vomiting. Private Deason testified that after he had sex with MB, and prior to appellant having sex with her, she threw up. He and appellant had to help her to the bathroom.

MB and MN's incapacitation was further corroborated by the government's toxicology expert's testimony regarding their estimated BAC levels. At the time of the sexual assaults, MB's BAC was estimated to be 0.3 gram percent. MN's BAC was estimated to be 0.22 gram percent. The government's expert explained these BAC levels are consistent with a high level of impairment.

The evidence that appellant had sexual intercourse with MB and MN is similarly strong. In regards to MB, PVT Deason testified he saw appellant take MB, who was naked, to the bedroom after she finished throwing up in the bathroom. Appellant was in the bedroom with MB for approximately fifteen minutes. When appellant exited the bedroom, he implied to PVT Deason he had sex with MB by stating, "her pussy was tight."[9]

In regards to MN, appellant's penile swabs contained MN's DNA. This DNA evidence was further corroborated by PVT Deason's testimony that while appellant was in the bedroom having sex with MB, he saw MN sleeping on the futon with a pair of underwear "tucked in next to the frame."

Further, appellant's written sworn statement to CID admitted to having sex with MN and MB when he knew or reasonably should have known they were too intoxicated to consent. In regards to MN, appellant specifically detailed, "[A]fter [MN] was done throwing up, I had walked her back to the couch . . . . I took her shorts and underwear off. I took my shorts off and we started to have sex." In regards to MB, appellant specifically detailed, "[I] kneeled down and said '[MB], it is Daniel, are you okay[?]' . . . . I kissed her on the cheek and opened her legs, taken my shorts off, and started having sex with her."

The SAFE reports for both MB and MN revealed genital injuries consistent with penetration.

### 2. Strength of the Defense Case

The defense case was weak. The defense case theory focused on discrediting MB and MN by describing them as "teenagers" who got "caught past curfew with boys and drinking in a place that [they] were not supposed to be." The flaw in this case theory is that the bulk of the evidence supporting appellant's guilt did not come from MB and MN. Private Deason provided the most substantive testimony, which was corroborated by the physical injuries to the genitalia of MB and MN, DNA evidence, appellant's sworn statement, and expert testimony regarding the estimated intoxication of MB and MN.

---

[9] We highlight, again, that SA CH did not initially suspect appellant had sex with MB. Appellant was the first to mention he had sex with MB during his post-polygraph interview with SA CH. The fact that appellant was the first to reveal this information greatly undermines his argument that he made a false confession regarding MB or the events of that evening.

### 3. *The Materiality and Quality of the Evidence in Question*

The evidence appellant sought to admit was largely immaterial and possessed low, if any, probative value as previously discussed. Even if appellant would have been allowed to present evidence that his polygraph result was inconclusive and SA CH was cross-examined regarding whether appellant was told he did not pass, or he failed, and whether SA CH lied to appellant during the interview, that evidence would not have disproved all of the aforementioned corroborating evidence of his guilt. We also emphasize that defense counsel was permitted to elicit this evidence in a different form, by asking SA CH if he told appellant he did not believe him. Defense counsel chose not to pursue this line of questioning, perhaps for tactical reasons.

Accordingly, we find the evidence of appellant's guilt overwhelming. We are not persuaded that admission of testimony that appellant was told three times the result of his polygraph exam was not passing or allegedly failing, would have had a substantial impact on the findings in this case.[10] Even without appellant's post-polygraph confession, the evidence presented at trial demonstrated, beyond a reasonable doubt, that appellant had sex with MB and MN when he knew or reasonably should have known they were incapable of consenting due to intoxication.

## CONCLUSION

The findings as to Specifications 1 and 2 of Charge I and sentence are AFFIRMED.

Senior Judge BURTON and Judge RODRIGUEZ concur.

---

[10] Appellant contends the exclusion of the evidence in question violated both Mil. R. Evid. 707 and his Sixth Amendment right to present evidence in his defense. Just as we find the military judge's ruling did not violate Mil. R. Evid. 707, we also find appellant was not denied his Sixth Amendment right to fully confront SA CH. However, assuming there is constitutional error, based on the prejudice analysis above, any potential constitutional error was "harmless beyond a reasonable doubt," and we are confident appellant was not prejudiced. *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018); *See also Kohlbek*, 78 M.J. at 335 n. 7.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court